# Michael Wayne Barker

### v.

# Commonwealth of Virginia

Record No. 841209

November 27, 1985

Present: All the Justices

*Deborah C. Wyatt (D. Michael Atkins; James L. Camblos, III,* on briefs), for appellant.

*Margaret Poles Spencer, Assistant Attorney General (William G. Broaddus, Attorney General,* on brief), for appellee.

STEPHENSON, J. delivered the opinion of the Court.

In a jury trial, Michael Wayne Barker was found guilty of rape, sodomy, and malicious wounding for which he received penitentiary sentences totalling 90 years. His appeal presents issues respecting sufficiency of the evidence, juror qualification, cross-examination of the prosecutrix, pretrial discovery, and jury instructions.

Pursuant to established law, we must view the evidence in the light most favorable to the Commonwealth. On June 6, 1983, between 8:00 and 9:30 p.m., Peggy Forbes, the prosecutrix, was alone in her apartment in Albemarle County. She was dressed in a "blue robe and a bikini bathing suit bottom." Shortly before 8:00 p.m., her boyfriend and her one-year-old daughter left the apartment. While watching television, Forbes heard a knock on the door of her apartment. She opened the door "part way," and Barker pushed it open farther and hit Forbes on the head with "a hard object." She fell to the floor and Barker pulled her into the living room.

When Forbes offered resistance, Barker cut her left wrist and arm with a knife. He threatened to continue cutting her if she persisted in fighting and screaming. Barker then "ripped . . . off" Forbes' clothes and raped her.

Thereafter, Barker ordered Forbes to "roll over," and when she protested, Barker cut her again and threatened to kill her. Forbes then "rolled over," and Barker sodomized her. Afterwards, Barker pulled her into a bedroom and then departed.

When the boyfriend returned to the apartment and discovered the situation, he called Forbes' father and the police. When the police arrived, Forbes "appeared to be in shock." The police found blood stains on the living room rug, on a bedspread, and on Forbes' robe.

Forbes was taken to a hospital and about 2:00 a.m. was examined by a doctor. A bandage on her left arm was partially saturated with fresh blood, and blood was in her hair. Forbes was extremely nervous and appeared distraught and disheveled. She had a bruise on her forehead above her right eye and another bruise and a fresh abrasion on her chest. There were "numerous lacerations" on her left forearm. Two of the larger cuts were bleeding

and required surgical stitches. In addition, blood was found on both of Forbes' thighs.

A pelvic examination revealed that her "external genitalia were caked with blood." The examination also revealed "actively motile" spermatozoa and blood in her vagina.

Two lacerations were discovered between her anus and "the posterior part of the vagina." There was a "five millimeter tear" in her anal opening which the doctor testified could have resulted from penetration by a foreign object.

On June 12, 1983, Barker called Forbes on the telephone and told her that he should have killed her the first time and that he would do it "this time." In August 1983, while Barker was incarcerated, he said to another prisoner: "I wish I had killed the bitch, that way I wouldn't be here now." Also in August, when Barker was being treated for an unrelated injury, he said to a hospital nurse, "I raped that nurse a month ago." The evidence suggests that Barker's statement was a reference to Forbes, who formerly was employed as a nurse.

First, we consider Barker's contention that the evidence is insufficient to support a conviction. Our standards for reviewing sufficiency of the evidence are well established. We must view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, and the trial court's judgment will be affirmed unless plainly wrong or without evidence to support it. *Davis* v. *Commonwealth*, 230 Va. 201, 205-06, 335 S.E.2d 375, 378 (1985); *Tuggle* v. *Commonwealth*, 228 Va. 493, 510, 323 S.E.2d 539, 549 (1984), *rev'd on other grounds*, 471 U.S. 1096 (1985). Additionally, the credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of a jury. *Coppola* v. *Commonwealth*, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), *cert. denied*, 444 U.S. 1103 (1980).

Barker points to certain conflicts in the evidence and inconsistencies in Forbes' testimony and, relying upon *Willis & Bell* v. *Commonwealth*, 218 Va. 560, 238 S.E.2d 811 (1977), argues that Forbes' testimony is inherently incredible. *Willis & Bell* is inapposite. In that case, the victim's testimony was wholly uncorroborated and her testimony on direct examination conflicted with her testimony on cross-examination and at the preliminary hearing. Moreover, without explanation, she waited nearly a month before reporting the alleged offenses. She also tried to withdraw the arrest warrants. Her reputation in the community for truthfulness

was "low." For these reasons, we held that the victim's story was "incredible as a matter of law." *Id.* at 564, 238 S.E.2d at 813. In *Willis & Bell*, we recognized the weight to be accorded a jury's verdict but stated that "we are not required to believe that which we know to be inherently incredible or contrary to human experience. . . ." *Id.*

In the present case, however, Forbes' testimony was corroborated substantially by physical and medical evidence.[1] Following the alleged attack, she was nervous and distraught, and a prompt report of the crimes was made to the police. Moreover, Barker made two incriminating statements to disinterested witnesses. The jury resolved the conflicts and inconsistencies in the evidence against Barker, and we cannot say as a matter of law that the jury's determination was plainly wrong or without evidence to support it.

■ Next, we consider whether the trial court erred in refusing to exclude a venireman for cause. The record discloses that Barker previously had been convicted on the same charges and sentenced to 120 years in the penitentiary. Upon discovery of exculpatory evidence not disclosed during the first trial, a new trial had been ordered. During jury *voir dire* in the new trial, a venireman stated that she knew of Barker's previous conviction and 120-year sentence. Although the venireman equivocated when questioned about how this knowledge would affect her judgment as a juror, the trial court concluded that she was qualified and refused to exclude her from the jury.

An accused has a fundamental right to a trial by an impartial jury. U.S. Const. amends. VI and XIV; Va. Const. art. I, § 8. To qualify as a juror, a venireman must "stand indifferent in the cause," Code § 8.01-358, and any reasonable doubt regarding his impartiality must be resolved in favor of the accused. *Justus* v. *Commonwealth*, 220 Va. 971, 976, 266 S.E.2d 87, 90 (1980); *Breeden* v. *Commonwealth*, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976).

> If there be a reasonable doubt whether the juror [is impartial and free from prejudice], that doubt is sufficient to in-

---

[1] We do not mean to suggest here that corroboration of a victim's testimony is essential to a conviction of rape. To the contrary, "[i]t is not essential in a rape case for the prosecutrix to be corroborated[,] and her testimony alone is sufficient to sustain a conviction." *Poindexter* v. *Commonwealth*, 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972).

sure his exclusion. For . . . it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible.

*Wright* v. *Commonwealth*, 73 Va. (32 Gratt.) 941, 943 (1879). This does not mean, however, that a trial court must exclude all veniremen who have any preconceived opinion of the case. *Calhoun* v. *Commonwealth*, 226 Va. 256, 258, 307 S.E.2d 896, 897 (1983); *L. E. Briley* v. *Commonwealth*, 222 Va. 180, 185-86, 279 S.E.2d 151, 154 (1981).

Ordinarily, a determination whether a juror is qualified rests within the sound discretion of the trial court, and its finding will not be disturbed on appeal absent manifest error. *Calhoun*, 226 Va. at 258-59, 307 S.E.2d at 898. Some veniremen, however, are excluded for cause automatically, irrespective of a showing of impartiality during *voir dire*. Such automatic exclusions leave no room for judicial discretion. *See Gray* v. *Commonwealth*, 226 Va. 591, 311 S.E.2d 409 (1984) (automatic disqualification of juror based on kinship to victim); *Salina* v. *Commonwealth*, 217 Va. 92, 225 S.E.2d 199 (1976) (automatic disqualification of juror based on ownership of stock in victim corporation).

We believe the venireman in the present case was subject to automatic exclusion. It is difficult to perceive of anything more prejudicial to an accused than to be tried by a juror who knows that another jury unanimously had determined his guilt of the same offense charged. We hold, therefore, that when a venireman knows of an accused's previous conviction of the same offense for which he is being retried, the venireman cannot qualify as a juror in the new trial.

*United States* v. *Williams*, 568 F.2d 464 (5th Cir. 1978), involved a similar issue. There, two jurors who knew of the defendant's previous conviction on the same charges were allowed to serve in the subsequent trial. The Court of Appeals for the Fifth Circuit reversed, stating that "we are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged." 568 F.2d at 471.

Accordingly, we hold that the trial court erred in refusing to exclude the venireman for cause. Because this case must be remanded, we will consider Barker's remaining assignments of error.

One assignment of error pertains to the trial court's limiting Barker's cross-examination of the prosecutrix. In an effort to show Forbes' bias and motive to fabricate the offense, Barker sought to cross-examine her on three matters related to the instant crimes. One matter concerned Forbes' one-million-dollar civil suit pending against her landlord for maintaining unsafe premises. Barker also endeavored to cross-examine Forbes concerning her attempt to receive benefits under a victim-assistance program which required her cooperation with all law-enforcement agencies. Finally, Barker wanted to question Forbes concerning her worker's compensation claim which was based on the theory that she met Barker in the course of her employment as a credit manager. The trial court refused to allow this line of cross-examination.

■ Cross-examination is fundamental to the truth-finding process. It is an absolute right guaranteed by the confrontation clause of the Sixth Amendment. *Shanklin* v. *Commonwealth*, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981). One purpose of cross-examination is to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest. *Whittaker* v. *Commonwealth*, 217 Va. 966, 967, 234 S.E.2d 79, 81 (1977). Indeed, we consistently have held that "the right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute." *Hewitt* v. *Commonwealth*, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984).

We believe that the matters Barker wished to explore were appropriate subjects of cross-examination to test Forbes' credibility. Clearly, these matters were relevant to establish the victim's possible bias and motive to fabricate. Therefore, we hold that the trial court erred in restricting Barker's cross-examination.

■ Barker filed a discovery motion to obtain all information in the possession of the Commonwealth which "could tend to exculpate [Barker] or reduce the penalty which he might suffer should he be convicted." The information Barker sought was set forth in five specific requests. In one, he requested "[t]he opportunity to examine any and all medical and psychiatric records" of the prosecutrix. He stated that his request was made "[p]ursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), *Stover* v. *Commonwealth*, 211 Va. 789, 180 S.E.2d 504 (1971), and other pertinent

authority." The trial court refused to order the production of these records.[2]

The record before us is not altogether clear, but it seems to suggest that these medical and psychiatric records were not in the possession, custody, or control of the Commonwealth.[3] If this is the case, the Commonwealth's Attorney could not produce them. On the other hand, if any of these records are discoverable pursuant to *Brady* and *Stover*, and in the possession, custody, or control of the Commonwealth, then, upon remand, the court should order their production by the Commonwealth's Attorney.

■ The final issue is whether the trial court erred in refusing defendant's proffered Instruction E, which reads:

> You may find the defendant guilty on the testimony of the complaining witness alone if it is credible and you believe it beyond a reasonable doubt. But if her testimony is incredible, or so contrary to human experience or to usual human behavior as to make it unworthy of belief, it is not sufficient to support a finding of guilty.

This is not a case resting upon "the testimony of the complaining witness alone." To the contrary, as previously discussed, Forbes' testimony was corroborated by other evidence. Moreover, in other instructions, the court fully informed the jury of its proper role in considering the credibility of witnesses and the weight of the evidence, and as we have stated before:

> When a granted instruction accurately states a principle of law, the trial court does not abuse its discretion by refusing another instruction involving the same legal principle. . . . Moreover, when one instruction correctly states the law, multiple instructions upon the same legal principle are undesirable.

*Tuggle*, 228 Va. at 508, 323 S.E.2d at 548 (citations omitted). Thus, we conclude that the court did not err in refusing Barker's proffered instruction.

---

[2] The trial court did grant Barker's request for all reports and hospital and medical records pertaining to the victim's examination and treatment performed on the night of the offense.

[3] The record indicates that some records were in the possession of the University of Virginia Hospital and others were in the possession of Forbes' psychiatrist.

Because the court erred in failing to exclude the juror and in limiting Barker's cross-examination of the prosecutrix, we will reverse the judgment and remand the case for retrial if the Commonwealth be so advised.

*Reversed and remanded.*