COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Bumgardner
Argued at Richmond, Virginia

TROY CAPLE

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0250-00-2              JUDGE JAMES W. BENTON, JR.
                                            SEPTEMBER 25, 2001
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Margaret P. Spencer, Judge

            James T. Maloney (Joseph D. Morrissey;
            Morrissey & Hershner, on brief), for
            appellant.

            John H. McLees, Jr., Senior Assistant
            Attorney General (Mark L. Earley, Attorney
            General, on brief), for appellee.


    A jury convicted Troy Caple of voluntary manslaughter and

possession of a firearm while under the age of eighteen.  Caple

contends the trial judge erred by denying him the right to

cross-examine a witness to establish bias and motive to

fabricate.[1]  For the reasons that follow, we hold that the error

was harmless, and we affirm the convictions.

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

    [1] Caple's brief also presented for review the issue of the
sufficiency of the evidence to support the convictions.  The
Commonwealth's brief responded to that issue.  The record
establishes, however, that this Court's October 6, 2000 order
granted an appeal only with respect to the issue "[w]hether
[the] trial court erred in denying petitioner the right to
cross-examine a witness as to bias and motive to fabricate."  It
denied an appeal on the sufficiency issue "for the reasons set
forth in the order of this Court dated July 28, 2000."  We
address only the issue granted for appeal.

JaQuan Ellis was shot outside a nightclub on July 19, 1998, and died from a gunshot wound that severed blood vessels in his abdomen. Near his body, the police recovered a cartridge casing which was ejected from an automatic nine millimeter firearm.

The Commonwealth's case-in-chief included the testimony of three convicted felons. Shawn Harris, who was incarcerated on a federal firearm offense at the time of trial, testified that he was to be released from the federal prison within a month and then was scheduled to begin serving a state prison sentence for an unlawful wounding conviction. He had been told that his testimony "could help" reduce the period of imprisonment he was to serve for the state conviction.

Harris testified that he and his friend, Troy Caple, were in the vicinity of a nightclub on Saturday night, or early morning July 18, when they were attacked by other young men. As he and Caple engaged in a fistfight with the men, he heard a gunshot. Harris saw everyone fleeing, and he fled after he saw a young man fall near Caple. A deputy sheriff, who heard the gunshot, detained Harris a short distance from the nightclub and seized a thirty-eight caliber revolver. Harris testified that he had the revolver during the fight but that he did not display or fire it. He denied having another firearm and said he did not see Caple shoot anyone. The police tested Harris' hands for gunpowder residue after his arrest and found none. The evidence proved

-

Harris' revolver had bullets in each chamber and had not been fired.

Damian Johnson, who was serving a nine-year sentence in a federal prison for a narcotics conviction, testified that he was near the nightclub that same night. He saw Caple and Harris, both of whom he has known for many years, in a fistfight with other young men. He testified that Caple stepped back from the fight, displayed a firearm, and fired it. Johnson testified that he did not know whether Caple shot anyone.

Although Johnson testified that he had received no offers of assistance for his testimony, he admitted he had not told the police about the shooting until after he had been arrested for the narcotics charge. He also testified that he received a reduction in his federal sentence for his assistance in the federal prosecution against his codefendant and he was aware that he was eligible to petition for a further reduction of his federal sentence.

During cross-examination by Caple's attorney, Johnson testified as follows:

> Q: Before you were arrested, you had heard
> all about this offense, hadn't you?
>
> A: Yeah.
>
> Q: It was kind of the talk of the
> neighborhood, right?
>
> A: Yeah.

-

Q:  And different people had told you what
they had seen happening down there at the
Flood Zone, hadn't they?

A:  No.  I just kept hearing things.

[PROSECUTOR]:  I'm going to object to
anything he's heard, Judge.  Hearsay.

[JUDGE]:  Sustained.

At a bench conference, Caple's attorney told the judge the
testimony was not offered for its truth but to prove an
alternate source for Johnson's knowledge of the incident and to
show Johnson falsified his testimony about his personal
observation.  The trial judge ruled that it was hearsay and
disallowed any further inquiry.  Later, out of the presence of
the jury, Caple's attorney made a proffer of Johnson's
testimony.

Avery Miles, who was serving a sentence in a federal prison
for conspiring with his cousin, Johnson, to distribute crack
cocaine, testified that he received a telephone call from Caple
at 1 or 2 o'clock the morning of July 19.  Caple, whom he had
known about three years at that time, asked if he had seen
Harris, who was also Miles' friend.  When Miles said he had not,
Caple replied he would explain later why he wanted Harris.  That
evening, Caple went to Miles' home and told Miles that he and
Harris had been attacked by some people near the nightclub.
Miles testified that Caple said he had fired a Glock nine
millimeter handgun, which jammed after he fired one shot.

-

Miles testified that before Caple called him he had heard about the incident. Miles also testified that he talked to Johnson about the shooting a few days after it happened and that he had not talked to Johnson about it again because Johnson had been arrested and was in jail. Miles was aware he could still petition for a reduction of his federal sentence and said "it's possible" his testimony would help reduce his sentence if he was truthful.

Caple testified and denied shooting Ellis. He said he was at home at the time the incident occurred. His mother and father also testified that Caple lived at home and was required to observe a midnight curfew on weekends. Other witnesses testified as to Caple's reputation for truthfulness and good character. Witnesses also testified about the bad reputations of the prosecution's witnesses.

The jury acquitted Caple of the charge of second degree murder and convicted Caple of the lesser offense of voluntary manslaughter. The jury also convicted him of possessing a firearm while he was under the age of eighteen.

## II.

Caple contends the trial judge erred in denying him the right to cross-examine Johnson as to bias and motive to fabricate his testimony. He relies upon the Supreme Court's holding "that the right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not

-

abused is absolute."  Hewitt v. Commonwealth, 226 Va. 621, 623,

311 S.E.2d 112, 114 (1984).  See also Barker v. Commonwealth,

230 Va. 370, 376, 337 S.E.2d 729, 733 (1985).  The Commonwealth

concedes that the testimony Caple sought to prove, which was

proffered for the record, was admissible as an exception to the

hearsay rule.

> The hearsay rule does not operate to
> exclude evidence of a statement, request, or
> message offered for the mere purpose of
> explaining or throwing light on the conduct
> of the person to whom it was made.

>  *      *      *      *      *      *      *

> "Wherever an utterance is offered to
> evidence the state of mind which ensued in
> another person in consequence of the
> utterance, it is obvious that no assertive
> or testimonial use is sought to be made of
> it, and the utterance is therefore
> admissible, so far as the hearsay rule is
> concerned."

Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670-71

(1960) (citation omitted).  The Commonwealth contends, however,

that although the testimony was admissible for the purpose

offered, the error in excluding it was harmless.  We agree.

To prove Johnson had fabricated his testimony about seeing

Caple shoot a gun, Caple's attorney sought to elicit testimony

at trial that Johnson had another source of information

concerning the shooting.  After the trial judge sustained the

prosecutor's hearsay objection, Caple's attorney made an offer

of proof, out of the presence of the jury, to establish the

-

nature of the excluded testimony.  Johnson's proffered testimony

includes the following:

Q:  All right.  I was asking you, at one point, whether or not you had discussed this case with other people before making a statement to the police.

A:  Okay.

*      *      *      *      *      *      *

Q:  Talked to any friends out on the street or anybody about the case?

A:  When I was out on the streets, somebody told me about it.

Q:  Okay.  Who told you about it?

A:  My cousin.  I think my cousin told me.

Q:  And who's your cousin?

A:  Avery [Miles].

Q:  What did [Miles] tell you?

A:  He just told me that [Caple] killed the dude.

Q:  Okay.  Did he give you any facts about the case?

A:  No.

Q:  Did he tell you what time or where?

A:  No.

Q:  He never told you what time?

A:  He told me where.

Q:  He told you it was [in the area of the nightclub]?

A:  Yeah.

-

Q:  Did he tell you it was around 2 o'clock in the morning?

A:  No, I already knew that.

Q:  But he didn't give you any facts other than that?

A:  No.

Q:  If you already knew it, why did you go in to talk to him about it?

A:  He just told me [Caple] killed a dude down in [the area of the nightclub].

As the Supreme Court held in Hewitt, "the right . . . to cross-examine prosecution witnesses to show bias or motivation . . . rests upon the constitutional right to confront one's accusers."  226 Va. at 623, 311 S.E.2d at 114.  The judge's error in denying this right to cross-examine is subject to harmless analysis.  Williams v. Commonwealth, 32 Va. App. 395, 399, 528 S.E.2d 166, 168 (2000) (en banc).  "Whether . . . an error is harmless in a particular case depends upon a host of factors, . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

-

Although the excluded testimony contains some details that Johnson's trial testimony lacked, Johnson had testified before the jury about the significant facts that this proffer sought to establish. During cross-examination at trial, Johnson testified as follows:

> Q:  Before you were arrested, you had heard all about this offense, hadn't you?
>
> A:  Yeah.
>
> Q:  It was kind of the talk of the neighborhood, right?
>
> A:  Yeah.
>
> Q:  And different people had told you what they had seen happening down there at the Flood Zone, hadn't they?
>
> A:  No.  I just kept hearing things.

In short, the jury learned from Johnson's trial testimony that he had heard of the incident from other sources prior to his report to the police. Caple's argument at trial and in his brief on appeal is that the excluded testimony was essential for the jury "to evaluate the very real possibility that Johnson gained his information, not from witnessing the [homicide], but from hearing about it from 'rumors on the street.'" Clearly, the jury had testimony from Johnson upon which Caple could have argued that very fact. Indeed, in his closing statement to the jury, Caple's attorney asserted that Johnson and Miles knew each other before the shooting and further asserted the following:

-

> [Johnson and Miles] knew what was being said
> out on the street, and it wouldn't be beyond
> them to make up things to try to get . . .
> [a sentence] reduction in court. . . .
>
> *    *    *    *    *    *    *
>
> [Johnson] says Troy Caple did so and so,
> because he's trying to get a bond in Federal
> court.  We don't even know that he was out
> there.  He may have heard from . . . Miles
> or from someone else when it happened out in
> their neighborhood or where they frequently
> visit and made the whole thing up just to
> try to get a reduction or to get a bond in
> Federal court.

We hold that the erroneously excluded evidence was repetitious and cumulative of Johnson's trial testimony and that its impeachment value, when viewed in light of his other testimony at trial, was negligible.  The jury was aware that Johnson had heard of the incident, and the jury had ample other evidence to warrant the jury in rejecting Johnson's testimony if it was inclined to so do.  Thus, we hold that the excluded evidence was so insubstantial when compared to Johnson's trial testimony that the judge's error in excluding it was harmless beyond a reasonable doubt.  See Dearing v. Commonwealth, 260 Va. 671, 673-74, 536 S.E.2d 903, 904 (2000).

Accordingly, we hold that the evidentiary ruling was not reversible error, and we affirm the convictions.

Affirmed.

-