COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Clements and Kelsey
Argued at Salem, Virginia


SHERRY D. YOPP

                                                        OPINION BY
v.        Record No. 3165-02-3          JUDGE ROSEMARIE ANNUNZIATA
                                                        JULY 6, 2004
DANNY LEE HODGES


            FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
                    William N. Alexander II, Judge

        John T. Boitnott for appellant.

        Tonita M. Foster (Law Office of Tonita M. Foster, on briefs), for
        appellee.

        (Deanna P. Stone; Rhodes, Ferguson & Stone, Ltd., on brief),
        Guardian *ad litem* for the infant child.


        Sherry D. Yopp (mother) appeals the trial court's decision awarding visitation with her

minor child D.L.H. (child) to Danny Lee Hodges (maternal grandfather) and his wife (maternal

grandmother) (grandparents, collectively).  Mother contends the trial court applied the wrong

burden of proof and, thus, failed to find by clear and convincing evidence that denial of visitation

to the maternal grandparents would be harmful or detrimental to the child's welfare.  She also

contends that the trial court erred in finding that visitation with the maternal grandparents was in

the child's best interests.  At oral argument on this case, this Court asked the parties to brief

whether or not the appeal should be dismissed for lack of jurisdiction based on mother's failure

to timely mail or deliver a copy of her notice of appeal to the child's guardian *ad litem*, Deanna

P. Stone.  The guardian *ad litem* and maternal grandfather submitted briefs arguing that the

appeal must be dismissed under this Court's decision in Hughes v. York County Dep't of Soc.

Servs., 36 Va. App. 22, 548 S.E.2d 237 (2001).  We hold that Hughes is distinguishable and

decline to dismiss the appeal.  We further hold on the merits that the trial court did not err in

awarding visitation to the maternal grandparents.

## I.  Procedural Background

Danny Lee Hodges, the child's maternal grandfather, filed a petition in the juvenile and

domestic relations district court on behalf of the maternal grandparents seeking visitation with

the child.  Following resolution of the matter by the juvenile and domestic relations district court,

the case was appealed to the circuit court and tried *de novo*.  As permitted by Code

§ 16.1-266(E)[1] (formerly Code § 16.1-266(D)), the trial court appointed Deanna P. Stone as

guardian *ad litem* to represent the child's interests in the matter.  Neither party challenges the

trial court's authority to appoint a guardian *ad litem* in this case to represent the interests of the

child.  The court's order of August 22, 2002, appointing the guardian *ad litem* was "[r]equested

by" mother and "[s]een and agreed" to by maternal grandfather.

The child's natural father, who neither lived with mother nor had any contact with the

child, joined in the maternal grandparents' request that the court award them visitation with the

minor child.  At the hearing, the guardian *ad litem* allied herself with the maternal grandparents

and the child's natural father in requesting that the maternal grandparents be awarded visitation

with the child.  The circuit court found it was in the child's best interests to have visitation with

the maternal grandparents on the second weekend of each month, on December 26 and 27, and

for one week during summer vacation.[2]  The court's final order memorializing its ruling was

---

[1] Code § 16.1-266(E) provides, in pertinent part, that, "[i]n all other cases which in the discretion of the court require . . . a guardian ad litem . . . to represent the child . . . , competent attorneys-at-law may be appointed by the court."

[2] The maternal grandparents objected to the limits imposed on visitation but did not file a cross-appeal.

entered on October 30, 2002. The guardian *ad litem* endorsed the final order under the heading "Seen."

On December 2, 2002, mother timely filed a notice of appeal with the clerk of the circuit court indicating her intention to challenge the circuit court's final order, but she failed to deliver a copy of the notice of appeal to the child's guardian *ad litem*.[3]

## II. Factual Background

On appeal, we view the evidence, and all reasonable inferences that may be drawn from the evidence, in a light most favorable to the maternal grandparents as the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). So viewed, the record establishes that the child and mother lived in the home of the maternal grandparents for the first year and a half of the child's life. Mother moved to a residence immediately adjacent to the maternal grandparents' home, but the child remained with the grandparents. The child resided with the maternal grandparents in their home until age four and a half.

Around the time the child reached age five, mother married Jamie Yopp (Jamie). Jamie stayed with mother only occasionally. Grandfather testified that Jamie would "move in for a while and then move out and get an apartment and stay there for a while, then he'll move back in again, then move back out. It's just like a revolving door." Grandfather said that he was concerned "with the situation with [Jamie] moving in and out [because] there's no sense of stability to [the child's] life." Jamie and mother have since separated, although they still "socialize like human beings."

---

[3] The guardian *ad litem* did not file a responsive brief on behalf of the child or appear at oral argument before this Court. However, as noted *supra*, the guardian *ad litem* filed a brief in response to this Court's request addressing whether mother's failure to mail or deliver a copy of the notice of appeal to her precluded consideration of the appeal.

After mother's marriage, the child began spending more time with her. However, the maternal grandparents still cared for him a majority of the time because "he would go up there [to mother's house] and want to come back, and she would let him come back." The maternal grandparents essentially "raised [the child] until he was five or six years old." They ensured the child got on the school bus every morning, met him in the afternoon on his return, prepared dinner for him, and helped him with his homework. Grandfather helped the child plant sunflower and green bean seeds in their backyard. Grandfather said, "We dug a little spot and we planted it. He [the child] checked it every day, every day." Grandfather talked to a neighbor about "plowing up a place to plant a big garden" for the child, and the child became "all excited about [it]." Grandfather also took the child on fishing trips.

The relationship between mother and grandparents disintegrated in 2002 after mother denied the grandparents' request to take the child "to the beach." The grandparents subsequently filed a petition seeking visitation rights. Mother thereafter refused to allow the grandparents to see the child except for one weekend each month. Mother resisted the grandparents' petition for visitation on the grounds that the grandparents "badger[ed] [the child] with questions" when they visited with him and consumed alcohol in the child's presence. She also contended that grandfather has a "very violent" temper. As evidence of grandfather's violent temper, mother related an incident in which grandfather "picked up [her] bed and slammed it down because . . . [mother's] boyfriends made him mad." However, mother admitted that this incident took place before she had any children.

When the child visits with his grandparents, mother does not allow them to touch, hug, or kiss the child. The child "cries to stay" with his grandparents when mother ends the visitation. Mother admitted that the child loves his grandparents "very much." However, she opined that severing contact between the child and his grandparents would have no effect on him.

The child's biological father expressly requested that the maternal grandparents be given visitation rights. The mother did not claim, nor does any evidence establish, that the biological father is an "unfit" parent.[4] See Troxel v. Granville, 530 U.S. 57, 68 (2000) (plurality opinion). The child's appointed guardian *ad litem* took the father's request into account and joined in the recommendation that the maternal grandparents be given visitation rights.

After hearing the evidence, the court ordered the parties to mediation. Mediation proved fruitless, however, and the trial court ultimately ruled that, "based on the evidence . . . I've heard, I do find that it would be in the child's best interest to continue to have some relationship and contact with these grandparents." It thus granted the maternal grandparents' petition for visitation with the child. This appeal followed.

### III. Analysis

#### A. Mother's Failure to Notice the Guardian *Ad Litem* Did Not Create a Jurisdictional Defect Requiring Dismissal of her Appeal

We first address whether mother's appeal must fail on jurisdictional grounds because she failed to deliver a copy of the notice of appeal to the guardian *ad litem*. We hold that mother's failure does not give rise to a jurisdictional defect requiring dismissal of her appeal because the guardian *ad litem* in this case is not an indispensable party.

Rule 5A:6, which governs notices of appeal to this Court, states in relevant part:

> No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, counsel files with the clerk of the trial court a notice of appeal, and at the same time mails or delivers a copy of such notice to all *opposing counsel* and the clerk of the Court of Appeals.

(Emphasis added). Rule 5A:1 defines "opposing counsel" as "depending on the context, 'counsel for the appellant' or 'counsel for the appellee.'" Rule 5A:1 further defines "counsel for

---

[4] The mother reiterated the concession at oral argument.

- 5 -

the appellee" as "one of the attorneys representing each appellee represented by an attorney, and each appellee not represented by an attorney." The Rules do not specifically define the term "appellee." See Hughes, 36 Va. App. at 25, 548 S.E.2d at 238.

In Hughes, we held that the guardian *ad litem* in a termination of parental rights case is an "appellee" within the meaning of Rule 5A:1 because the guardian had taken a position opposing that of the appellant. Id. at 26, 548 S.E.2d at 239. Central to the conclusion that the guardian *ad litem* was an appellee within the meaning of Rule 5A:1 was our determination that, "[i]n a proceeding to terminate parental rights, the guardian *ad litem* representing the interests of the children is an indispensable party to the appeal of the final decree." Id. at 26, 548 S.E.2d at 238. "Thus," we concluded, "*in the present case*, the guardian *ad litem*[,] [as an indispensable party,] constituted an appellee and 'opposing counsel' for purposes of Rule[] 5A:6." Id. at 26, 548 S.E.2d at 239 (emphasis added). We therefore dismissed the appeal for want of jurisdiction because the appellant "failed to provide the guardian *ad litem* with notice of the appeal" as required by Rule 5A:6. Id.

Here, like the appellant in Hughes, mother failed to deliver a copy of the notice of appeal to the guardian *ad litem*. However, we find Hughes inapposite to the instant case because we hold that the guardian *ad litem* in a custody or visitation case is not an indispensable party.

"The Supreme Court of Virginia has used the terms 'indispensable parties' and 'necessary parties' synonymously." Watkins v. Fairfax County Dep't of Family Servs., 42 Va. App. 760, 765, 595 S.E.2d 19, 22 (2004) (citing Asch v. Friends of Mount Vernon Yacht Club, 251 Va. 89, 90-91, 465 S.E.2d 817, 818 (1996)). It has defined a necessary or indispensable party as one who

> is in the actual enjoyment of the subject matter, or has an interest
> in it . . . which is likely to be defeated or diminished by the
> plaintiff's claim, in such case he has an immediate interest in

> resisting the demand, and all persons who have such immediate interests are necessary parties to the suit.

Asch, 251 Va. at 90-91, 465 S.E.2d at 818 (quotations omitted). Thus, a necessary or indispensable party is "so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed." Id. at 91, 465 S.E.2d at 818 (quotations omitted).

The holding in Hughes that a guardian *ad litem* in termination of parental rights cases is an indispensable party is rooted in the statutory bar to proceeding with such cases in the absence of an appointed guardian. Code § 16.1-266(A) requires that, "[p]rior to the hearing by the court of . . . a petition seeking termination of residual parental rights . . . , the court *shall* appoint a discreet and competent attorney-at-law as guardian ad litem to represent the child." (Emphasis added). Code § 16.1-266(A)'s directive is mandatory, not discretionary. See Watkins, 42 Va. App. at 765, 595 S.E.2d at 22 ("Indeed, the guardian *ad litem* is clearly an indispensable party in termination cases because the statute governing the appointment of guardians *ad litem* in termination proceedings, Code § 16.1-266, mandates their appointment in such cases."). In the absence of an appointed guardian *ad litem*, by statute the proceeding to terminate parental rights is barred.

In contrast, Code § 16.1-266(E) allows the trial court to appoint a guardian *ad litem* "[i]n all other cases which *in the discretion of the court* require" such an appointment. (Emphasis added). In fact, in a custody or visitation case, the trial court "shall not" appoint a guardian *ad litem* "unless the court finds . . . that the interests of the child or children are not otherwise adequately represented." The courts of the Commonwealth routinely resolve custody and visitation disputes without the appointment of a guardian *ad litem*.

Because the trial court may resolve a custody or visitation dispute in the absence of a guardian *ad litem*, we cannot say that the guardian *ad litem's* presence in the case before us "*is an absolute necessity*, without which the court cannot proceed." Asch, 251 Va. at 91, 465 S.E.2d at 818 (quotations omitted) (emphasis added). One whose participation in a suit is merely permissible cannot be said to be necessary or indispensable to the proceedings, nor can it be said that the party's absence deprives the court of jurisdiction to address the issues raised. Cf. Hughes, 36 Va. App. at 26, 548 S.E.2d at 238. We thus conclude that, by making the appointment of a guardian *ad litem* in a custody case a matter of judicial discretion, the legislature has determined that the appointment and presence of a guardian *ad litem* representing the interests of a child who is the subject of a custody and visitation dispute, while permissible, is not required before the court can fully adjudicate the issues presented.

In summary, the guardian *ad litem* in this case is not necessary or indispensable to the proceedings. It follows that the guardian *ad litem* is neither an "appellee" nor "opposing counsel" within the meaning of Rule 5A:6 as explained in Hughes. Thus, mother's failure to provide the guardian *ad litem* with a copy of the notice of appeal pursuant to Rule 5A:6 is inconsequential to this Court's power to exercise its jurisdiction and adjudicate the maternal grandparents' petition for visitation with mother's minor child. We find that the appeal is properly before us.[5]

---

[5] We do not suggest that, where the trial court has determined that "interests of the child . . . are not . . . adequately represented" by the parents' or other parties' counsel, necessitating the appointment of a guardian *ad litem*, the child's interests should be unrepresented on appeal. Code § 16.1-266. The role of the guardian *ad litem* appointed by the trial court is important to the proper adjudication of the issues. See Standards to Govern the Performance of Guardians Ad Litem for Children, std. J (2003), *at* http://courts.state.va.us/gal/gal_standards_children_080403.html. We conclude only that the absence of the guardian *ad litem*, by virtue of the appellant's failure to provide the requisite notice, does not deprive this Court of its subject matter jurisdiction and authority to adjudicate the matter. Nothing here changes this Court's authority to take into account the views of the guardian *ad litem* by ordering that the child's representative be brought into the case. Finally, we

- 8 -

B.  The Trial Court Did Not Apply the Wrong Standard of Proof

Turning to the merits of this appeal, mother contends that the trial court erred when it awarded the maternal grandparents visitation with her minor son in the absence of a finding by clear and convincing evidence that the denial of visitation would be harmful or detrimental to the child's welfare.  She relies on Williams v. Williams, 24 Va. App. 778, 485 S.E.2d 651 (1997), aff'd, 256 Va. 19, 501 S.E.2d 417 (1998), to support her contention.  The trial court found Williams distinguishable from the instant case, and we find no error in that determination.

Code § 20-124.2(B) provides that the "court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest."  Persons with a legitimate interest include a minor child's grandparents. See Code § 20-124.1.  The party seeking visitation bears the burden of proving it is in the best interests of the child.  See Code § 20-124.2(B); Dotson v. Hylton, 29 Va. App. 635, 640, 513 S.E.2d 901, 903 (1999).  The term "clear and convincing evidence"

> has been defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and *unequivocal."*

Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

In Williams, this Court considered an appeal from a trial court's order granting visitation with a minor child to paternal grandparents.  Williams, 24 Va. App. at 780, 485 S.E.2d at 652.

---

do not hold here that this Court may not, under appropriate circumstances, dismiss an appeal on the ground that the guardian *ad litem* was not provided requisite notice.  Rule 5A:6, Hughes, 36 Va. App. at 26, 548 S.E.2d at 239.

The trial court granted the grandparents' petition for visitation over the objections of both mother and father. Id. We reversed the trial court's decision, holding that "the parents' right to autonomy in child rearing is a fundamental right protected by the Fourteenth Amendment of the United States Constitution and that state interference with that right must be justified by a compelling state interest." Id. In support of the primacy of the parent-child relationship and in furtherance of the principle that parents have a constitutional right to autonomy in child rearing, this Court determined that the third party seeking visitation over the objections of both parents must show more than that the requested visitation would be in the child's best interests. "[B]efore visitation can be ordered over *the objection of the child's parents*, a court must find an actual harm to the child's health or welfare without such visitation." Id. at 784-85, 485 S.E.2d at 654 (emphasis added).

We subsequently distinguished the holding in Williams in a case involving only one parent's objection to grandparent visitations. In Dotson, we affirmed the trial court's award of visitation to the paternal grandmother. Although father was incarcerated, he requested that the paternal grandmother be allowed to visit with his child. Dotson, 29 Va. App. at 638, 513 S.E.2d at 902. The trial court granted the request over mother's objection, finding that such visitation was in the best interests of the child. Id. at 638, 513 S.E.2d at 903. We rejected mother's argument that the trial court erroneously failed to apply the Williams standard, holding that "[w]hen only one parent objects to a grandparent's visitation and the other parent requests it, the trial court is not required to follow the standard enumerated in Williams." Id. at 639, 513 S.E.2d at 903; see also Griffin v. Griffin, 41 Va. App. 77, 83-84, 581 S.E.2d 899, 902 (2003).

The standard enunciated in Dotson applies here because father expressly supported the maternal grandparents' request for visitation with the child and the mother has never asserted, and does not now assert, that father is an unfit parent who should be deemed legally incapable of

participating in parental decision making. "Custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interests test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock." Griffin, 41 Va. App. at 83, 581 S.E.2d at 902. Thus, the trial court in the instant case applied the correct standard, i.e. the best interests of the child, in determining whether to award visitation to the grandparents.

We disagree with mother's reliance on Troxel v. Granville, 530 U.S. 57 (2000), for the proposition that the trial court applied the incorrect standard. The Troxel Court recognized that "there is a presumption that fit parents act in the best interests of their children" which must be considered in disputes that arise between the parent and a third party. Id. at 68. The Supreme Court specifically signaled the lower court's error in applying a presumption in favor of visitation with grandparents which "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child" and that, in so doing, the lower court "failed to provide any protection for [the fit parent's] fundamental constitutional right to make decisions concerning the rearing of her [or his] own [children]." Id. at 69-70. The Troxel Court was not presented with the circumstances we face in the instant case. Here, one parent requests that visitation be accorded the third party, the other parent objects to the request, and both parents are fit. Because both parents are fit, the trial court had to presume that both were "act[ing] in the best interests of their" child in order to protect each parent's "fundamental right to make decisions concerning the rearing of" their child. See id. at 68-70. Thus, faced with a contest in which one parent's fundamental rights were pitted against the other parent's fundamental rights, see Griffin, 41 Va. App. at 83, 581 S.E.2d at 902, the trial court properly considered the child's best interests. We therefore find that Troxel is inapposite and that Dotson controls the issue on

appeal, and we hold that the trial court did not err as a matter of law in considering only the best interests of the child.

### C. The Trial Court's Determination that Visitation with Maternal Grandparents Is in the Best Interests of the Child Is Not Plainly Wrong

We afford great deference to the trial court's determination of what is in the best interests of the child. Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002). It "is a matter of discretion . . . , and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed." Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996). Similarly, "[w]hen a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Wheeler v. Wheeler, 42 Va. App. 282, 288, 591 S.E.2d 698, 701 (2004). Moreover, the credibility of witnesses and the weight to be accorded their testimony is a matter exclusively within the province of the trier of fact. See Barker v. Commonwealth, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985). Finally, we view the evidence upon which the trial court relied in a light most favorable to the maternal grandparents as the party prevailing below. Congdon, 40 Va. App. at 258, 578 S.E.2d at 835.

Applying these principles, we find that the evidence supported the visitation requested and that the trial court's decision was not plainly wrong. The evidence establishes that the maternal grandparents had been a significant part of the child's life until the summer of 2002. The child routinely stayed at the maternal grandparents' house for the first four or five years of his life. They ensured that he attended school and completed his homework. They provided him with meals every evening, and they participated in family recreational activities such as gardening and fishing. The child loves his grandparents and cries when mother takes him away

from them.  The evidence also shows that the grandparents were a source of stability that was often lacking in mother's household.

Based on this evidence, the trial court determined it would be in the child's best interest to have regular and frequent visitation with the grandparents.  The decision of the trial court was not plainly wrong and was supported by the evidence.  We, therefore, affirm.

<u>Affirmed.</u>

Clements, J., dissenting, in part, and concurring, in result.

While I agree with the result of this appeal, I disagree with the majority's conclusion that mother's failure to provide timely notice of the appeal to the child's guardian *ad litem* does not require dismissal of mother's appeal. In my view, the decision of this Court in Hughes v. York County Dep't of Soc. Servs., 36 Va. App. 22, 548 S.E.2d 237 (2001), controls the outcome of this case and requires the opposite conclusion. I would hold, therefore, that mother's failure to make the child's guardian *ad litem* a party to this appeal by providing her with notice of the appeal in accordance with Rule 5A:6(a) precludes us from entertaining this appeal.

Rule 5A:6(a) provides, in pertinent part, that "[n]o appeal [to this Court] shall be allowed unless, within 30 days after entry of final judgment . . . , counsel files with the clerk of the trial court a notice of appeal, *and at the same time mails or delivers a copy of such notice to all opposing counsel*." (Emphasis added.) Here, it is undisputed that, while mother timely filed a notice of appeal with the clerk of the circuit court indicating her intention to challenge the circuit court's final order, she did not mail or deliver a copy of the notice of appeal to the child's guardian *ad litem*, who, pursuant to Rule 1:5, was still a counsel of record in the case.[6] The issue, then, is whether we may consider this appeal even though the child's guardian *ad litem* was not given proper notice of the appeal under Rule 5A:6(a).

Faced with a similar issue in Hughes, a case involving the termination of parental rights, we held that the appellant's failure to provide notice of the appeal, under Rule 5A:6(a), to the

---

[6] Rule 1:5 provides, in pertinent part, as follows:

> "Counsel of record" includes a counsel or party who has signed a pleading in the case or who has notified the other parties and the clerk in writing that he appears in the case. Counsel of record shall not withdraw from a case except by leave of court after notice to the client of the time and place of a motion for leave to withdraw.

guardian *ad litem* appointed by the circuit court to represent the children's interests precluded us from entertaining the appeal. 36 Va. App. at 26, 548 S.E.2d at 239. We explained that, for purposes of Rule 5A:6(a), the term "opposing counsel" includes all necessary or indispensable parties to the appeal.[7] Id. This is so, we reasoned, because "[a]n appellate court [may not properly] adjudicate an appeal unless all necessary [or indispensable] parties are properly before the court." Id. at 25, 548 S.E.2d at 238. We further explained that a necessary or indispensable party "is one whose interests are likely to be defeated or diminished by a successful appeal" and that, "[w]here the guardian *ad litem* has taken a position on behalf of the children in opposition to the appealing party, then the interests of the children are subject to being 'defeated or diminished' by the appellant's claim." Id. at 25-26, 548 S.E.2d at 238-39. Applying these principles, we concluded that the children's guardian *ad litem*, who had "joined the [Department of Social Services] in requesting that appellant's parental rights be terminated," id. at 25, 548 S.E.2d at 238, was a necessary or "indispensable party to the appeal and, thus, qualifie[d] as an 'opposing counsel' under Rule 5A:6(a), to whom the appellant ha[d] a duty to mail or deliver a copy of the notice of appeal," M. G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 177, 583 S.E.2d 761, 764 (2003) (citing Hughes, 36 Va. App. at 25-26, 548 S.E.2d at 238-39). We further concluded that, because the "appellant failed to provide the [children's] guardian *ad litem* with the notice of appeal," as required by Rule 5A:6(a), "the guardian *ad litem* was not . . . made a party to the appeal." Hughes, 36 Va. App. at 26, 548 S.E.2d at 239; see also M. G., 41 Va. App. at 177, 583 S.E.2d at 764 (noting that "the court never acquires jurisdiction over the

---

[7] As the majority indicates, the Supreme Court and this Court have used the terms "necessary party" and "indispensable party" interchangeably in referring to those entities and persons who must be made a party to an appeal. See Watkins v. Fairfax County Dep't of Family Servs., 42 Va. App. 760, 765, 595 S.E.2d 19, 22 (2004). As the rationale expressed herein applies equally to both types of parties, I, too, draw no distinction between those terms here.

- 15 -

indispensable party" when that party is not given notice of the appeal). Thus, we held we could not entertain the appeal. Hughes, 36 Va. App. at 26, 548 S.E.2d at 239.

As the majority notes, "[h]ere, like the appellant in Hughes, mother failed to deliver a copy of the notice of appeal to the [child's] guardian *ad litem*." And like the children's guardian *ad litem* in Hughes, the child's guardian *ad litem* in this case took a position on behalf of the child in opposition to the appellant. At the hearing before the circuit court, the child's guardian *ad litem* joined the child's grandparents and the child's natural father in requesting that the circuit court award visitation to the grandparents. The child's mother opposed that request. After the circuit court entered an order granting visitation to the grandparents, mother noted her appeal, seeking to overturn the circuit court's decision. Thus, the child's interests are subject to being defeated or diminished by mother's claim in this appeal. Accordingly, under the principles set forth in Hughes, the child's guardian *ad litem* is a necessary or indispensable party to this appeal. Id. at 25-26, 548 S.E.2d at 238-39. As such, she is an "opposing counsel" within the meaning of Rule 5A:6(a). Id. at 26, 548 S.E.2d at 239. Mother was, thus, required under Rule 5A:6(a) to mail or deliver a copy of the notice of appeal to her. Because mother failed to do so, the child's guardian *ad litem* was not made a party to the appeal. Id. Consequently, we may not entertain this appeal. Id. Accordingly, I would dismiss this appeal and not reach the merits of the case.

The majority finds Hughes inapplicable here because the instant case involves visitation, rather than the termination of parental rights. The majority reasons that a guardian *ad litem* appointed by the trial court in a termination-of-parental-rights case is a necessary or indispensable party on appeal because that appointment is required by Code § 16.1-266(A), while a guardian *ad litem* appointed by the trial court in a custody or visitation case is not a necessary or indispensable party on appeal, even when representing children whose interests are

subject to being defeated or diminished, because that appointment is merely discretionary under Code § 16.1-266(E). I disagree with this reasoning.

For one thing, it disregards the established definition of "a necessary or indispensable party" long employed by the Supreme Court and this Court. As the majority notes, the Supreme Court has defined "necessary parties" as follows:

> """"Where an individual is in the actual enjoyment of the subject matter, or has an interest in it, either in possession or expectancy, which is likely to be defeated or diminished by the plaintiff's claim, in such case he has an immediate interest in resisting the demand, and all persons who have such immediate interests are necessary parties to the suit.""""

Asch v. Friends of Mount Vernon Yacht Club, 251 Va. 89, 90-91, 465 S.E.2d 817, 818 (1996) (quoting Raney v. Four Thirty Seven Land Co., 233 Va. 513, 519-20, 357 S.E.2d 733, 736 (1987) (quoting Gaddess v. Norris' Ex'rs., 102 Va. 625, 630, 46 S.E. 905, 907 (1904) (quoting 1 Daniel's Chancery Practice, 244))). Thus, as we said in Hughes, a necessary or indispensable party to an appeal "is one whose interests are likely to be defeated or diminished by a successful appeal." 36 Va. App. at 25, 548 S.E.2d at 238. Consequently, the majority's conclusion that the child's guardian *ad litem* is not a necessary or indispensable party to this appeal, even though the child's interests stood to be defeated or diminished if mother prevailed on appeal, impermissibly conflicts with the established definition of "a necessary or indispensable party." See Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991) ("We are bound by decisions of the Supreme Court of Virginia and are without authority to overrule [them]."); Robinson v. Commonwealth, 13 Va. App. 540, 543, 413 S.E.2d 661, 662 (1992) ("Under the rule of *stare decisis*, a decision by a panel of this court is an established precedent.").

Likewise, the majority's view that "[o]ne whose participation in a suit is merely permissible cannot be said to be necessary or indispensable to the proceedings" ignores the fact

that the lower court may appoint a guardian *ad litem* in cases like this only if the court finds that independent representation of the child's interests is necessary. See Verrocchio v. Verrocchio, 16 Va. App. 314, 317, 429 S.E.2d 482, 484 (1993) ("The established practice is that a guardian *ad litem* may be appointed after a trial judge makes a preliminary finding that the best interests of the child *require* such appointment." (emphasis added)); Code § 16.1-266(E) (allowing the court to appoint a guardian *ad litem* "[i]n all other cases which in the discretion of the court *require* . . . a guardian *ad litem* . . . to represent the child or children" (emphasis added)). Indeed, as the majority notes, Code § 16.1-266(E) specifically permits the court to appoint a guardian *ad litem* in a custody or visitation case only if the court "finds . . . that the interests of the child or children are not otherwise adequately represented" by the parents' or other parties' counsel. See also Verrocchio, 16 Va. App. at 320, 429 S.E.2d at 486 ("Code § 16.1-266 'recognizes that the substantive rights and interests of the child are often separate and distinct from those of the other parties to the litigation . . . [and] that these rights and interests are best protected by an independent party.'" (quoting Stanley v. Fairfax County Dep't of Social Servs., 10 Va. App. 596, 601, 395 S.E.2d 199, 202 (1990), aff'd, 242 Va. 60, 405 S.E.2d 621 (1991))). Thus, "a finding that the appointment of a guardian *ad litem* is necessary and would be in the child's best interest is an essential prerequisite" to the making of such an appointment. Id. at 322, 429 S.E.2d at 487 (holding that, while not required in every case, "where the trial judge finds that the best interests of the child are not adequately protected by the parties" and that appointment of a guardian *ad litem* is "necessary to protect the interests of the minor child," then "appointment of a guardian *ad litem* for the child is appropriate").

It follows, therefore, that, in appointing the guardian *ad litem* in this case to represent and advocate the child's interests, the circuit court specifically found that the guardian *ad litem's* participation in the case was necessary to the proceedings because the child's interests were not

otherwise represented. For this Court to then say that the guardian *ad litem* in the instant case is not a necessary or indispensable party to the appeal simply because the appointment of a guardian *ad litem* is not required in all custody and visitation cases is, in my view, an unwarrantedly narrow application of the principles set forth in Hughes. It not only serves to effectively overrule the circuit court's determination that the guardian *ad litem* was required to represent the child in the case, it also serves to generally demean and diminish the role of guardians *ad litem* in custody and visitation cases appealed to this Court. See generally Bottoms v. Bottoms, 249 Va. 413, 420, 457 S.E.2d 102, 108 (1995) (noting that "the recommendation of the guardian *ad litem* . . . , while not binding or controlling, should not be disregarded" and that, "[t]he duty of a guardian *ad litem* in a child custody dispute is to see that the interest of the child is 'represented and protected'" (quoting Code § 8.01-9)).

Most significantly, however, in leaving the child's independent interests unrepresented by counsel on appeal in this case, the majority's decision elevates the procedural rights of mother over what should be the paramount consideration—the welfare and best interests of the child. See Verrocchio, 16 Va. App. at 320, 429 S.E.2d at 486 ("'In Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody [and visitation] of their minor children. All other matters are subordinate.'" (quoting Mullen v. Mullen, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948))); Kogon v. Ulerick, 12 Va. App. 595, 596, 405 S.E.2d 441, 442 (1991) ("In matters concerning custody and visitation, the welfare and best interests of the child are the 'primary, paramount, and controlling consideration[s].'" (quoting Mullen, 188 Va. at 269, 49 S.E.2d at 354)); Commonwealth *ex rel*. Gray v. Johnson, 7 Va. App. 614, 617-18, 376 S.E.2d 787, 788 (1989) ("The strong public policy of this Commonwealth posits that the paramount

concern where children are concerned are their best interests."). I cannot subscribe to such an outcome.

For these reasons, I respectfully dissent from the majority's decision not to dismiss this appeal.