COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


THOMAS O. WILLIAMS, IV
AND
SARAH HASTY WILLIAMS
                                          OPINION BY
v.    Record No. 2260-96-3       CHIEF JUDGE NORMAN K. MOON
                                        JUNE 3, 1997
THOMAS O. WILLIAMS, III
AND
FRANCES S. WILLIAMS


            FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                      Ray W. Grubbs, Judge

            Harriet D. Dorsey (Dorsey & Hartley, on
            brief), for appellants.

            H. Gregory Campbell, Jr., for appellees.


        Thomas O. Williams, IV and Sarah Hasty Williams appeal the

trial court's order granting Thomas O. Williams, III and

Frances S. Williams visitation with the appellants' daughter,

Leslie Williams.  Appellants assert that Code § 20-124.2(B), as

it pertains to non-parent visitation, violates the Fourteenth

Amendment to the United States Constitution.

        We hold that the parents' right to autonomy in child rearing

is a fundamental right protected by the Fourteenth Amendment of

the United States Constitution and that state interference with

that right must be justified by a compelling state interest.

Accordingly, we further hold that the language of Code

§ 20-124.2(B) that "[t]he court shall give due regard to the

primacy of the parent-child relationship" requires proof that

harm or detriment to the welfare of the child would result without visitation, before visitation may be ordered over the united opposition of the child's parents. Finding that the trial court failed to determine if harm or detriment would result to Leslie's health or welfare if visitation was not ordered, we reverse and remand for reconsideration of visitation consistent with the holdings of this opinion.

Leslie Williams was born on March 9, 1991, and resides with her biological parents in Blacksburg, Virginia, one block from the home of appellees, her paternal grandparents. The trial court found that

> Leslie's family is intact. No evidence of
> paternal abuse or neglect; [appellants] are
> respectable members of their community;
> [appellants] are mentally, physically and
> morally fit; and [appellants] are capable of
> meeting Leslie's financial, educational,
> moral and social needs.

The parties maintained regular familial contact until February, 1994, when appellants, after consultation with a counsellor in Waxall, North Carolina, announced that they were "detaching" from their relationship with appellees. Counseling efforts were unsuccessful, and the grandparents ultimately filed a petition seeking visitation with their granddaughter. Visitation of ten hours per week was ordered. The circuit court held that

> [appellees] are mentally, physically, and
> morally fit; . . . [appellees] are
> responsible, mature, and respected members of
> their community; . . . Leslie will benefit
> from contact with her grandparents, living
> only one block apart; . . . grandparent

visitation will not interfere with her health or emotional development; . . . grandparent visitation is a minimal intrusion into the family unit; . . . [appellees] obviously love Leslie and have the ability to adequately care for her; and . . . it is in Leslie's best interest to have visitations with her grandparents.

## I.  The Statute

There is no common law right of visitation for grandparents in Virginia.  Kogon v. Ulerick, 12 Va. App. 595, 405 S.E.2d 441 (1991).  However, Code § 20-124.2(B) permits grandparents, and others, to seek visitation according to the following standard:

The court shall give due regard to the primacy of the parent-child relationship, but may upon a showing by clear and convincing evidence that the best interests of the child would be served thereby award custody or visitation to any other person with a legitimate interest.

Code § 20-124.1 provides that "person with a legitimate interest" is to be "broadly construed, and includes, but is not limited to grandparents, stepparents, former stepparents, blood relatives and family members."

## II.  Fourteenth Amendment Challenge

The Fourteenth Amendment of the United States Constitution provides that "[n]o state shall . . . deprive any person of life, liberty or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  In applying the protection of the Fourteenth Amendment, the United States Supreme Court has held that "[w]here certain fundamental rights are involved . . . regulation limiting these rights may be justified only by a

- 3 -

`compelling state interest' . . . and . . . legislative enactments must be narrowly drawn to express only the legitimate state interests at stake."  Roe v. Wade, 410 U.S. 113, 155 (1973) (emphasis added).

### A.  The Protected Interest

While the Constitution does not specifically mention parental rights, the Constitution's guarantee of liberty has been repeatedly interpreted as encompassing such a right:

> While this court has not attempted to define
> with exactness the liberty thus guaranteed
> [by the Fourteenth Amendment] . . . .
> Without doubt, it denotes not merely freedom
> from bodily restraint but also the right of
> the individual to contract, to engage in any
> of the common occupations of life, to acquire
> useful knowledge, to marry, establish a home
> and bring up children, to worship God
> according to the dictates of his own
> conscience, and generally to enjoy those
> privileges long recognized at common law as
> essential to the orderly pursuit of happiness
> by free men.

Meyer v. Nebraska, 262 U.S. 390, 399 (1923).  Similarly, the Supreme Court in Santosky v. Kramer, 455 U.S. 745, 753 (1982), noted its "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."

In addition to recognizing as a fundamental liberty interest the right of parents to raise their children, the Supreme Court has also established that the Constitution's guarantee of fundamental privacy rights also embodies a fundamental right to parental autonomy in child rearing.  In Prince v. Massachusetts,

321 U.S. 158, 166 (1944), the Court acknowledged a "private realm of family life which the state cannot enter."  <u>See also</u> <u>Moore v. City of East Cleveland</u>, 431 U.S. 494 (1977).

Other jurisdictions, considering the constitutionality of grandparent visitation statutes, have concluded that the right to parental autonomy in child rearing constitutes a fundamental liberty interest.  <u>See</u> <u>Hawk v. Hawk</u>, 855 S.W.2d 573 (Tenn. 1993); <u>Brooks v. Parkerson</u>, 454 S.E.2d 769 (Ga. 1995).  The Tennessee Supreme Court, holding its grandparent visitation statute unconstitutional under the Tennessee Constitution,[1] held that "parental rights constitute a fundamental liberty interest." <u>Hawk</u>, 855 S.W.2d at 579.  Similarly, the Georgia Supreme Court, noting that "[t]he United States Supreme Court has long recognized a constitutionally protected interest of parents to raise their children without undue state interference," determined that the rights of parents to raise their children constituted a fundamental right.  <u>Brooks</u>, 454 S.E.2d at 771.

In light of these considerations, we hold that the right of the parents in raising their child is a fundamental right protected by the Fourteenth Amendment.

---

[1] Tennessee's grandparent visitation statute is markedly similar to Virginia's visitation statute.  The Tennessee statute "allows a court to order `reasonable visitation' with grandparents if it is `in the best interests of the minor child.'"  <u>Hawk</u>, 855 S.W.2d at 577 (citation omitted).  The Tennessee Supreme Court found the statute unconstitutional under Article I, Section 8 of the Tennessee Constitution, which is substantively identical to the Fourteenth Amendment, as it provides that "no man shall be . . . deprived of his life, liberty or property, but by the judgement of his peers or the law of the land."

## B. Compelling State Interest

State interference with a fundamental right must be justified by a "compelling state interest." Roe, 410 U.S. at 155. The Supreme Court has clearly established that to constitute a compelling interest, state interference with a parent's right to raise his or her child must be for the purpose of protecting the child's health or welfare. See Wisconsin v. Yoder, 406 U.S. 205, 230 (1972) (holding that Amish children would not be harmed by receiving an Amish education instead of attending public high school); Prince, 321 U.S. at 170 (permitting state prosecution of a parent who allowed her child to sell religious magazines on the ground that the state's interference was designed to prevent "psychological or physical injury" to the child); Pierce v. Society of Sisters, 268 U.S. 510, 534 (1925) (holding the parents' decisions to send their children to private schools was not inherently harmful to the children); Meyer, 262 U.S. at 402-03 (providing that "proficiency in a foreign language . . . is not injurious to the health, morals or understanding of the ordinary child").

## C. Constitutionality of Grandparent Visitation Statute

Code § 20-124.2(B) permits the state to interfere with the right of parents to raise their children by allowing a court, "upon a showing by clear and convincing evidence that the best interests of the child would be served," to order non-parent visitation. However, Code § 20-124.2(B) specifically indicates

- 6 -

that "[t]he court shall give due regard to the primacy of the parent-child relationship."  We interpret this language to evidence the legislature's intent that the court make the necessary finding that a denial of visitation would be harmful or detrimental to the welfare of the child, before interfering with the constitutionally protected parental rights of the child involved.

We further hold that the requirement of Code § 20-124.2(B) that "[t]he court shall give due regard to the primacy of the parent-child relationship" renders insufficient a finding by a court that it would be "better," "desirable," or "beneficial" for a child to have visitation with his or her grandparents.  "For the state to delegate to the parents the authority to raise the[ir] child as the parents see fit, except when the state thinks another choice would be better, is to give the parents no authority at all."  Hawk, 855 S.W.2d at 580.  For the constitutional requirement to be satisfied, before visitation can be ordered over the objection of the child's parents, a court must find an actual harm to the child's health or welfare without such visitation.

The "best interests" standard is considered in determining visitation only after a finding of harm if visitation is not ordered.  Without a finding of harm to the child, a court may not impose its subjective notions of "best interests of the child" over the united objection of the child's parents without violating the constitutional rights of those parents.  In this

- 7 -

regard, the parents' constitutional rights take precedence over the "best interests" of the child.

Holding that Code § 20-124.2(B) requires a finding that harm or detriment to a child's health or welfare would result without visitation, before visitation can be ordered over the united objection of the child's parents, and that the trial court failed to make such a finding, we reverse and remand for reconsideration of visitation in accord with this opinion.

<u>Reversed.</u>