## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Thomas Decatur et al.

v.

Rachel M. Eskam

July 19, 1999

Case No. CH99-133

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this case, paternal grandparents seek visitation with their granddaughter. The child's father is deceased. While the child's mother does not oppose visitation and, in fact, thinks that it would be in the child's best interest, she contends that she has a constitutional right to make the decisions regarding this issue without judicial intervention.

### Background

Brianna Katelyn Decatur was born on October 24, 1997. Because both parents worked, the father's relatives became the primary child care provider. Lynn Wright, the father's sister, regularly babysat. The father's parents, the petitioners, routinely cared for Brianna on Fridays and Saturdays and were with her many occasions while Ms. Wright was babysitting.

Brianna's parents separated in 1998. They litigated issues of custody and visitation, resulting in a joint custody order of October 5, 1998. The father died on October 15, 1998.

Despite the separation, the custody litigation, and the father's death, Brianna continued to have contact with her father's family. At some point, the mother stopped using the grandparents as care providers on Fridays and Saturdays. Nevertheless, with the mother's knowledge and acquiescence or approval, the grandparents maintained contact with Brianna when Ms. Wright babysat.

On December 3, 1998, the grandparents petitioned the juvenile court for visitation. The juvenile court granted the grandparents visitation one Saturday

per month, and the mother appealed. This court conducted a *de novo* hearing on July 14, 1999.

## Applicable Legal Principles

There is no common law right of visitation for grandparents. However, Virginia Code § 20-124.2(B) permits grandparents, and certain others, to seek visitation. In considering such a request, the court must apply the following standard:

> The court shall give due regard to the primacy of the parent-child relationship but may, upon a showing by clear and convincing evidence that the best interest of the child would be served thereby, award ... visitation to any other person with a legitimate interest.

On the other hand, the right of parents in raising their children is a fundamental right protected by the Fourteenth Amendment. *Williams v. Williams*, 24 Va. App. 778 (1997), citing *Prince v. Massachusetts*, 321 U.S. 158 (1944), and *Santosky v. Kramer*, 455 U.S. 745 (1982). Under most circumstances, a state may interfere with the parents' right to raise their children only when the state acts to protect the health or safety of the child. *Wisconsin v. Yoder*, 406 U.S. 230 (1972).

To reconcile the Virginia statute (§ 20-124.2(B)) with parents' constitutional rights, the Court of Appeals in *Williams* held that before grandparent visitation can be ordered *over the united objection of the child's parents*, a court must find that harm or detriment to the child's health or welfare would result without visitation. So construed, the Court of Appeals found Virginia's grandparent visitation statute constitutional. Because no such harm or detriment was shown in that case, the Court of Appeals reversed the trial court decision to award visitation to the grandparents.

A plurality of the Supreme Court of Virginia agreed with the Court of Appeals' rationale and interpretation of the statute and agreed that visitation should be denied because no showing of harm or detriment had been made. *Williams v. Williams*, 256 Va. 19 (1998). Two other justices concurred with the denial of visitation but did so on the belief that § 20-124.2(B) violates the Fourteenth Amendment as applied in the *Williams* case because it authorizes a court to mandate, against the parents' wishes, "those persons with whom the child shall associate." In other words, the concurring justices were of the opinion that the plurality saved the statute from constitutional infirmity only by improperly "adding additional language" to the statute.

Distilled, the *Williams* case involved an intact family in which both parents opposed the grandparents' effort to visit the child. Under such circumstances, the appellate courts held that although Virginia's grandparent visitation statute is constitutional, the statute must be interpreted to require a showing of harm or detriment and that no such showing had been made in that case.

In contrast, *Dotson v. Hylton*, 29 Va. App. 635 (1999), involved a grandparent's request for visitation in a pending custody dispute between divorced parents. Affirming the trial court's visitation award, the Court of Appeals distinguished *Williams*.

> In *Williams*, both parents objected to visitation by the grandparents, and the family was intact. Under those facts, the Supreme Court held that the state was required to have a compelling interest before interfering with parental rights. To grant visitation to grandparents, over both parents' objection, the trial court had to find that withholding visitation would be detrimental to the child before it applied the best interests standard. The Court stressed that "the child's family is intact" … . The factual predicate in *Williams* was a unified family.

In *Dotson*, the Court of Appeals held that when only one parent opposes grandparent visitation, the proper standard for the trial court to apply is the statutory "best interests of the child" standard, shown by clear and convincing evidence, as provided by § 20-124.2(B).

### Decision

The court is of the opinion that the statutory standard, not *Williams*, applies here because the child's family is not "intact" or "unified." Brianna's father is deceased. At the time of his death, the parents were separated and had just concluded custody litigation in which the father was awarded joint custody with the mother.

Therefore, it is incumbent upon the paternal grandparents to show, by clear and convincing evidence, that the best interests of Brianna would be served by visitation.

The grandparents have met their burden. The evidence establishes that the grandparents have been an integral part of the child's life since birth. She has been in the grandparents' home regularly and exhibits the greatest amount of love and affection toward them. In fact, the child's mother conceded in her testimony that the child has a good and meaningful relationship with the

grandparents and that it would be in Brianna's best interest to visit and maintain regular contact with them.

The court is also of the opinion that even if the *Williams* standard applies, the state has a compelling interest in this case because the grandparents have shown that harm or detriment to the child would result in a denial of visitation.

Without repeating all the evidence, it is obvious that Brianna and her paternal grandparents have, and have had since her birth, a close and affectionate relationship. At the hearing, the child's mother acknowledged that it would "not be good" for Brianna to grow up without her paternal grandparents. In fact, she agreed that a denial of visitation could be harmful or detrimental to Brianna because of her extremely close relationship with the grandparents.

In no case can a court project into the future and determine with certainty that actual harm will befall a child if he or she is deprived of association with some other person. Courts are not oracles; judges are not soothsayers. However, informed predictions can be made based upon evidence and inferences fairly drawn from the evidence. In this case, one can only conclude from the evidence that harm or detriment to the child would result from the deprivation of her paternal grandparents' companionship, love, and association. As noted above, even her mother, who opposes the grandparents' petition, concedes as much.

In addition, the court finds, upon clear and convincing evidence, that such visitation would be in the child's best interests.

Finally, the court is compelled to observe the atypical nature of this proceeding. The child's mother does *not* object to Brianna visiting her grandparents; she agrees that such visitation would be in Brianna's best interests; she concedes that a lack of such visitation could be harmful to the child; and she intends to allow the grandparents continued regular visitation.

In reality, then, there is no controversy about whether Brianna should visit with her grandparents. All parties agree that she should. Instead, the court is asked to set the specifics of the visitations because the parties cannot, or will not, do so voluntarily. Thus, under these peculiar facts, the *Williams* rationale seems inapposite for the additional reason that the child's mother does not object to the grandparents' visitation, but, having conceded that the child should visit with the grandparents, she rejects judicial involvement merely in establishing a schedule for such visits.

## Conclusion

For the reasons explained, the court grants visitation to the paternal grandparents on the first Saturday of every month from 9:00 a.m. to 6:00 p.m.