COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge McClanahan and Senior Judge Willis
Argued at Richmond, Virginia


WILLIAM MICUS

v.      Record No. 0964-05-2

DOROTHY MITCHELL

MEMORANDUM OPINION[*] BY
CHIEF JUDGE JOHANNA L. FITZPATRICK
MARCH 7, 2006


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

S. Braxton Puryear for appellant.

Anthony Paone, II (Paone & Gregorio, PLLC; Innsbrook Law
Group, PC, on brief), for appellee.


William Micus (father) appeals the award of custody of his minor child to her paternal

grandmother, Dorothy Mitchell (grandmother). Father claims that the trial court erred by:

(1) applying an improper standard for a custody dispute between a parent and a non-parent;

(2) finding that grandmother was a "person with a legitimate interest"; (3) awarding custody to

grandmother because sufficient evidence did not support that decision; and (4) relying on an

expert who was biased against his practice of agnihotra.[1] Grandmother raised three additional

issues, and claims that (1) father did not properly perfect his appeal because he failed to include

Tina Marie Federico (mother) in the notice of appeal; (2) the trial court erred in denying

grandmother's motion for child support; and (3) the trial court erred in failing to award

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Agnihotra is one facet of the "Five-fold Path." It entails burning dried cow dung and
chanting verses each day at sunrise and sunset.

grandmother attorney's fees. We affirm the decision of the trial court on the substantive issues but remand for the trial court to determine whether to award attorney's fees to grandmother.

I. Background

On appeal, we view the evidence in the light most favorable to grandmother, the party prevailing below. Brown v. Burch, 30 Va. App. 670, 681, 519 S.E.2d 403, 408-09 (1999). So viewed, the evidence establishes that child was born on June 11, 1996. In August 2001, father was granted sole legal and physical custody of child by the Circuit Court of Louisa County. At that time, the trial court fixed a specific visitation schedule for grandmother and required father to give thirty days notice to grandmother, mother, and the guardian *ad litem* before moving to a different residence. Furthermore, the trial court prohibited father from forcing child to practice agnihotra and from exposing her to the smoke or ash resulting from the practice of agnihotra. Father was held in contempt twice for failing to allow grandmother to visit with child per the schedule set forth in that order.[2]

In July 2003, father took child and moved to Arizona. He stated that during a meditation session he was told to move to Arizona, to take his child with him, and not to tell anyone of his actions. Father testified that around the same time, the lease on his apartment expired and although he looked for another residence, he could not find one within his budget. He did not notify grandmother or the court of his actions, and he admitted that he knew that he was violating a court order by moving.

Grandmother filed a petition for an emergency change of custody on August 14, 2003, alleging that visitation had been denied to her since the beginning of July, and she had reason to believe that father and child had moved outside of Virginia. The trial court issued a rule to show cause the same day that required father to appear on August 21, 2003. When father failed to

---

[2] Venue was transferred to the Circuit Court of Albemarle County on May 12, 2003.

appear, the court found him in contempt and ordered him to return with child no later than September 2, 2003. If father failed to do so, custody would be transferred to grandmother and the child was to return to Virginia.

Grandmother went to Arizona and while in Arizona, grandmother testified that when she, mother, and child went to a restaurant to eat, child would not speak or eat but instead curled into a fetal position and scribbled on the menu. On September 2, 2003, grandmother removed child from Arizona and returned with her to Virginia. Since that time, child has lived with grandmother and has only seen her father one time. Child saw father shortly after the move back to Virginia, and on that occasion father acted violently toward the grandmother after trying to pull child away from grandmother's house.

On November 23, 2003, father filed a motion requesting that the court return sole legal and physical custody of child to him.[3] Grandmother filed a motion for child support. A hearing was held on those motions on November 29, 2004.[4] The parties agreed that grandmother would bear the burden of proof because she filed the initial petition for a change of custody on August 14, 2003.

At the hearing, Marilyn Minrath, Ph.D., was qualified as an expert. Dr. Minrath collaborated with another doctor in conducting interviews and psychological tests on father and grandmother prior to the hearing. Dr. Minrath testified that, based on the interviews and tests, father's "psychological functioning is limited and is greatly influenced by his belief system right now in agnihotra, which limits, in our mind, his ability to test reality and determine reality accurately." She stated that his capacity to perceive reality is impaired and, as a result, he would be unable to meet the developmental needs of child. Further, his inability to channel his anger

_____

[3] A guardian *ad litem* was appointed for child and argued that it was in child's best interests to award custody to grandmother.

[4] The attempts made to serve process on mother failed.

- 3 -

towards his mother would disrupt the relationship between child and grandmother. Dr. Minrath opined that grandmother, although suffering from anxiety, would be able to meet child's developmental needs.

Leslie Durr, Ph.D., was also qualified as an expert. Child was Dr. Durr's patient, and Dr. Durr testified that when child first came to her office in October 2003, she played more violently than other children her age and would dissociate when asked questions of an emotional nature. Dr. Durr stated "[s]omething traumatic has happened to this child in---prior to my seeing her. Whether it was that actual move to Arizona or a series of events, I don't know, but when I started seeing her, she was a very traumatized child." Dr. Durr noted that since living with her grandmother, the child's emotional state had improved. Dr. Durr stated that grandmother provided a stable and secure environment for the child and that child's trauma could be aggravated if she was moved out of grandmother's home.

Both parties presented lay witnesses who testified concerning their good character and competence to raise a child.

After hearing the evidence, the trial judge entered a final decree on March 28, 2005. After analyzing applicable law, the trial court stated

> the Court does not find [father] to be unfit but it finds that there was actual harm to the Child's health and welfare when in the care of the father. It further finds that actual harm to the Child's health and welfare may occur in the future without a transfer of custody to the grandmother because of the disobedience of the father to the Court's Orders and the Care of the Child provided in Arizona.

The trial court concluded that grandmother proved by clear and convincing evidence that the best interests of child would be served by awarding custody to her. The trial court therefore awarded sole legal custody of child to grandmother. The trial court also found that father should have a continuing relationship with child, and so granted father "reasonable rights of visitation" on the condition that father obtain professional counseling.

In ruling on the other motions, the trial court noted that it "declines to award attorney's fees or expenses based on the lack of legal authority." The trial judge found no statutory authority for fees where the suit was not one for divorce, support, or maintenance, and so did not consider the issue. Additionally, the trial court found there was "insufficient evidence" to make an award of child support.

## II. Analysis

### A. Standard for Change of Custody and Sufficiency of the Evidence

Father first argues that the trial court applied an incorrect standard to the custody dispute between a parent and a non-parent. Additionally, father contends that the evidence was insufficient to support an award of custody to grandmother. We disagree.

In custody disputes where evidence is presented to the trial court at an *ore tenus* hearing, the trial court's determination is entitled to great weight and will not be disturbed "unless plainly wrong or without evidence to support it." Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1985).

Code § 20-124.2(B) provides that

> [i]n determining custody, the court shall give primary consideration to the best interests of the child. . . . The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.

See also Williams v. Williams, 24 Va. App. 778, 784-85, 485 S.E.2d 651, 654 (1997) (for a non-parent to be awarded visitation (custody) over the objection of the custodial parent, "a court must find an actual harm to the child's health or welfare without such visitation"), aff'd, 256 Va. 19, 501 S.E.2d 417 (1998); Griffin v. Griffin, 41 Va. App. 77, 84-85, 581 S.E.2d 899, 902-03 (2003). If the court finds that the child will be harmed if visitation (custody) is not ordered, then it must consider the best interests of the child. Williams, 24 Va. App. at 785, 485 S.E.2d at 654.

- 5 -

In a custody dispute between a parent and a non-parent, "the law presumes that the child's best interests will be served when in the custody of its parent." Bottoms v. Bottoms, 249 Va. 410, 413, 457 S.E.2d 102, 104 (1995) (citation omitted). The presumption favoring the parent is strong, but it can be rebutted if certain factors are established by clear and convincing evidence. Bailes v. Sours, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986). Those factors are (1) parental unfitness, (2) a previous order of divestiture, (3) voluntary relinquishment, (4) abandonment, or (5) "*a finding of 'special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent.*'" Id. (quoting Wilkerson v. Wilkerson, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973)) (emphasis added); see James v. James, 230 Va. 51, 54, 334 S.E.2d 551, 553 (1985).[5]

The trial court, in reaching its decision, cited Williams, admittedly a visitation case between a parent and a non-parent, as the appropriate test. The trial court noted that "[a]lthough there is no case directly on point concerning an award of custody versus visitation, this Court finds that the statute requires the same analysis." As a result, the trial court enunciated the standard: "this Court must determine whether a denial of custody to [grandmother], would result in an actual harm to the Child's health or welfare." The trial court further stated

> [t]he Court does not find [father] to be unfit but it finds that there was actual harm to the Child's health and welfare when in the care of father. It further finds that actual harm to the Child's health and

---

[5] A few cases hold that when custody has previously been awarded by the court to a non-parent or the parent has agreed that the non-parent should have custody, the parent loses the presumption in his or her favor and instead must prove that it is in the best interest of the child for the parent to have custody. Denise v. Tencer, 46 Va. App. 372, 393-94, 617 S.E.2d 413, 424 (2005); Albert v. Ramirez, 45 Va. App. 799, 809, 613 S.E.2d 865, 870 (2005). Those cases are inapposite because father still had legal custody, and grandmother was simply awarded temporary custody in an *ex parte* proceeding. Wilkerson, 214 Va. at 397, 200 S.E.2d at 583 (temporary custody order "has neither the dignity nor the effect of a final order of custody upon the merits"); see McEntire v. Redfearn, 217 Va. 313, 316, 227 S.E.2d 741, 743 (1976) (father bore burden of showing best interest of child where temporary custody awarded to grandmother in a proceeding at which father was present).

welfare may occur in the future without a transfer of custody to the grandmother.

The trial court then conducted a best-interest analysis and determined that the best interest of the child dictated that custody be awarded to grandmother. We find no error in the trial judge's legal analysis and its application to the facts of this case.

The credibility of witnesses, the weight accorded to their testimony, and any inferences drawn from the facts are matters "'solely for the factfinder's determination.'" Riner v. Commonwealth, 268 Va. 296, 320, 601 S.E.2d 555, 568 (2004) (citations omitted). We review the evidence in the light most favorable to grandmother, the party prevailing below, and grant to her all reasonable inferences fairly deducible therefrom. Brown, 30 Va. App. at 681, 519 S.E.2d at 409.

The evidence, properly viewed, established that father had acted violently toward grandmother, was unable to accurately perceive reality, and was incapable of putting child's needs before his own. Grandmother presented two experts to testify that she met child's developmental and emotional requirements and that father was incapable of doing so. Both Dr. Minrath and Dr. Durr opined that a change in custody would have significant effects on child's health. Father presented only lay witnesses who had seen his interaction with child from the period between 2001 and 2003, which was considered by the trial court but discarded. The trial court did not rely solely on the testimony of Dr. Minrath, but rather analyzed all of the evidence presented at trial in the final decree.

Additionally, the trial court found that there was "actual harm" to child when she was in father's care. In its findings of fact, the trial court determined that "the father is out of touch with reality and has impaired judgment in dealing with day to day needs of the Child," that child suffered trauma while in father's care, that father violated numerous court orders, and that when child was seen by grandmother in Arizona, she was coughing and congested and sat in a fetal

position and did not eat. Such facts constitute an "extraordinary reason" to award custody to a non-parent. Thus, we affirm the trial court's award of custody to grandmother.

### B. Grandmother as a Person with a Legitimate Interest

Father next argues that the trial court erred in characterizing grandmother as a person with a legitimate interest. We disagree.

Custody may be awarded to a "person with a legitimate interest." Code § 20-124.2(B). Code § 20-124.1 states that the term "'[p]erson with a legitimate interest' shall be broadly construed and includes, but is not limited to grandparents." The term is broadly construed to accommodate the best interest of the child. Id. Grandmother, being child's paternal grandparent, falls within the statutory definition of a person with a legitimate interest. See Yopp v. Hodges, 43 Va. App. 427, 436, 598 S.E.2d 760, 765 (2004). Additionally, the trial court had already determined that she had a legitimate interest as she was awarded visitation over father's objection.

### C. Father's Practice of Agnihotra

Father next contends that the trial court placed undue emphasis on the testimony of Dr. Minrath because she was prejudiced against agnihotra. Relying on Dr. Minrath's testimony, father claims, rendered the father's religious beliefs as the basis of his loss of custody in violation of the United States and Virginia Constitutions. Again, we disagree.

On appeal, the trial court's findings are entitled to great weight and will not be disturbed unless plainly wrong or unsupported by the evidence. Bailes, 231 Va. at 100, 340 S.E.2d at 827. The weight to be afforded testimony and any inferences drawn from the facts are matters "'solely for the factfinder's determination.'" Riner, 268 Va. at 320, 601 S.E.2d at 568 (citations omitted).

Father's contention that the order infringes upon his right to practice his religion is without merit. The initial order does not prohibit father from practicing agnihotra, it simply

prohibits father from exposing child to the ash and smoke resulting from the practice and from forcing child to perform the ritual. Lisa Powers, an officer of the Five-fold Path, Incorporated, and father's own witness, testified that the practice was not a religion. The trial judge considered the entire record and did not rely solely on Dr. Minrath's testimony in determining the placement of child. Rather, the trial judge found that grandmother provided a stable home, that child needed to be in a "safe and secure environment," that father had "unresolved anger" toward grandmother, that grandmother was able to maintain a close and loving relationship with child, and that father had previously violated the court's orders, resulting in adverse consequences to child. Thus the trial court did not violate any of father's First Amendment rights by awarding custody to grandmother.

### D. Failure to Include Mother in Notice of Appeal

Grandmother argues that father failed to perfect his appeal because he did not include mother in the notice of appeal.

Rule 5A:6 provides that:

> No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, counsel files with the clerk of the trial court a notice of appeal, and at the same time mails or delivers a copy of such notice to all opposing counsel and the clerk of the Court of Appeals.

This Court cannot hear an appeal unless all necessary parties are included on the notice of appeal. Watkins v. Fairfax County Dep't of Family Services, 42 Va. App. 760, 765-66, 595 S.E.2d 19, 21-22 (2004). A person is a necessary party "[w]here an individual is in the actual enjoyment of the subject matter, or has an interest in it, either in possession or expectancy, which is likely either to be defeated or diminished by the plaintiff's claim." Asch v. Friends of Mount Vernon Yacht Club, 251 Va. 89, 90-91, 465 S.E.2d 817, 818 (1996) (citations omitted). "A necessary or indispensable party is 'so bound up with that of the other parties, that their legal

presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed.'" Yopp, 43 Va. App. at 434, 598 S.E.2d at 763-64 (quoting Asch, 251 Va. at 91, 465 S.E.2d at 818).

Mother was not a party to this appeal. She was divested of custody in the 2001 order. The parties attempted to serve notice on mother of the final hearing in November 2004, but the attempts failed. Mother was not listed on the final decree, although she was named in the initial petition filed by grandmother. Mother filed a motion requesting visitation, but the motion was dismissed on the same date that the final decree was entered because mother failed to properly file the motion and did not comply with the directions given to her by the trial court. Thus, because mother is not a necessary party, grandmother's claim must fail.

### E.  Child Support

Grandmother claims that the trial court erred in declining to award her child support. We hold that the trial court did not abuse its discretion in failing to award child support to grandmother.

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Smith v. Smith, 18 Va. App. 427, 433, 444 S.E.2d 269, 274 (1994). In any proceeding where child support has been requested, the amount which results from the application of the guidelines set forth in Code § 20-108.2 is presumptively correct. Code § 20-108.1. In order to rebut that presumption, the court must make written findings that the award set forth in the guidelines would be unfair or improper as applied to the facts of that particular case. Id.

Additionally, where a parent is voluntarily underemployed or unemployed, the trial court may impute income to that party. Brody v. Brody, 16 Va. App. 647, 650, 432 S.E.2d 20, 21 (1993). However, the party seeking support must "produce evidence that was sufficient to

'enable the trial judge reasonably to project what amount could be anticipated'" before a trial court will impute income to a party. Id. at 651, 432 S.E.2d at 22 (quoting Hur v. Dep't of Social Services, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991)). See also Niemiec v. Niemiec, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) ("[t]he burden is on the party seeking the imputation"). A support order cannot be based on "speculation or conjecture." Brooks v. Rogers, 18 Va. App. 585, 592, 445 S.E.2d 725, 729 (1992).

The only evidence presented at trial regarding either party's income was the testimony of Jeremy Manning-Smith, who said that he paid father twenty dollars an hour when they worked on the same job during the spring prior to trial. Mr. Manning-Smith, though, was unsure of what he would be able to pay father for the current job they were completing, and did not know of father's future work prospects. No testimony was elicited concerning grandmother's income, and the sole evidence of expenses for child was grandmother's testimony that she paid $124 a month for health insurance for child. The trial court found that "there was insufficient evidence for the Court to make an [a]ward based on the gross incomes of the parties and calculations of child support under the Child Support Guidelines statute." The burden of proof was on grandmother to present sufficient evidence for the trial court to determine the appropriate amount. The trial court did not err because its decision is not plainly wrong or unsupported by the evidence.

F. Attorney's Fees

Lastly, grandmother contends that the trial court erred in failing to consider an award of attorney's fees to her. Because the trial court erroneously concluded that it did not have the authority to grant attorney's fees, we remand for consideration of this issue.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326,

333, 357 S.E.2d 554, 558 (1987).  However, a trial court "by definition abuses its discretion when it makes an error of law."  Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 883 (2003) (citation omitted).

A trial court hearing a custody dispute, including that between a parent and a third party, may in its discretion award attorney's fees.  Brown, 30 Va. App. at 689, 519 S.E.2d at 412.

The trial judge failed to award attorney's fees, not because he was exercising his discretion, but because he thought that he had no authority to do so.  The failure to consider an award of attorney's fees in this custody matter is an error of law.  Consequently, the case will be remanded to the trial court to determine the issue of attorney's fees.

Accordingly, we affirm in part and reverse in part and remand to the trial court to determine whether or not grandmother is entitled to attorney's fees.

Affirmed, in part,
reversed, in part,
and remanded.