COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia


REGGINALD MOORE AND
  VALERIE MOORE

                                                        OPINION BY
v.       Record No. 0098-22-1                    JUDGE DANIEL E. ORTIZ
                                                     JANUARY 24, 2023

DOMINIQUE JOE


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

Norman A. Thomas (Brian A. Thomasson; Charles E. Vogan, Jr.,
Guardian *ad litem* for the minor child; Norman A. Thomas, PLLC;
Brian A. Thomasson, P.L.C., on briefs), for appellants.

Brandon L. Ballard (Floyd J. Oliver; Legal Aid Society of Eastern
Virginia, on brief), for appellee.


After the Norfolk Juvenile and Domestic Relations District Court returned M.J. to the

custody of her biological mother, the J&DR court heard and denied the custody and visitation

actions brought by M.J.'s former foster care custodians, Regginald and Valerie Moore.

Unsatisfied with M.J.'s return, and undeterred by the finding that the biological mother was fit,

the Moores appealed.  On motion to strike, the Circuit Court for the City of Norfolk found that

the Moores failed to present evidence of actual harm to the minor child which would trump the

constitutional liberty interest of Dominique Joe, M.J.'s biological parent, and dismissed the

cases.  The Moores appeal the dismissal of their petitions for custody and visitation of their former

foster daughter.  They assign error to the circuit court's exclusion of Dr. Tirrell's *de bene esse*

deposition and subsequent grant of Joe's motion to strike.  Assuming, without deciding, that the

court erred in excluding the deposition, the Moores failed to prove current actual harm to the

minor child, and the record plainly shows that any error in excluding the deposition would not have affected the outcome. As such, any error is harmless. Finally, because the evidence shows no actual harm to M.J., the circuit court did not err in granting Joe's motion to strike. We affirm.

BACKGROUND

On April 2, 2019, the Norfolk Department of Human Services ("NDHS") removed M.J. on an emergency basis, after Joe abandoned the one-year-old child at a shelter for five days. M.J. was placed with the Moores on that date. On April 12, 2019, the Norfolk Juvenile and Domestic Relations District Court ("J&DR court") awarded custody of M.J. to NDHS. NDHS created a foster care service plan with the goal of "return to home" and the concurrent goal of "relative placement." NDHS spoke with Joe briefly around this time. On June 14, 2019, the J&DR court found that M.J. was an abused or neglected child. From June through December 2019, Joe's whereabouts were unknown. Two foster care review hearings were held. The J&DR court approved NDHS's placement plan at both hearings and found that visitation with Joe—at the reasonable discretion of NDHS—remained in M.J.'s best interests.

On December 26, 2019, Joe finally contacted NDHS. Joe was then "referred to Dr. Tirrell Forensics to complete a Parenting Capacity Evaluation," connected to reunification services, and encouraged to reinstate mental health services. NDHS reported that Joe had a job with a "temp agency in Norfolk" and was "maintaining a two-bedroom apartment." Joe began weekly visitations with M.J. on January 6, 2020. On April 3, 2020, the J&DR court conducted a permanency planning hearing and approved NDHS's "return to home" plan.

Joe met with Dr. Tirrell in March and April 2020. On July 30, 2020, NDHS reported that Joe had completed her parenting capacity evaluation with Dr. Tirrell and continued to participate in parenting classes and reunification services. Because supervised weekly visits were successful, NDHS recommended increasing visitation to twice weekly. Although the pandemic

interrupted in-person visits, Joe made serious efforts to continue visits virtually. Joe was pregnant at this time and maintained consistent prenatal care. She also maintained stable housing and remained employed to the extent that she was able.[1] On September 11, 2020, the J&DR court conducted a second permanency planning hearing and again reapproved the "return to home" plan. Recognizing that M.J. was now on a path to being returned to her biological mother, the Moores filed two petitions for custody and visitation of M.J. the next week. Charles Vogan was appointed as Guardian *ad litem* ("GAL") for M.J. in the Moores' custody and visitation cases.

In December 2020, NDHS reported that Joe continued to "express interest in having her child [M.J.] returned to her care and custody" and "actively participate[d] in weekly visitation." She completed at least forty-nine supervised visitations with no concerns, including an overnight supervised visit during Thanksgiving. NDHS established "an ongoing overnight visitation plan for weekends and the Christmas holiday." Joe continued to maintain "safe and adequate housing." NDHS also reported that Joe was following through with Dr. Tirrell's recommendations, including individual therapy and a medication assessment, with "no recommendations for medication."

On January 8, 2021, the J&DR court held a third permanency planning hearing and reapproved the "return to home" placement plan. M.J. began a trial home placement with Joe on this date. That same day, the J&DR court dismissed the Moores' petitions for custody and visitation of M.J. The Moores noted their appeals of the custody and visitation cases to the circuit court ("circuit court appeals"). In March 2021, NDHS recommended that M.J. return to Joe's home permanently, suggesting that it was in M.J.'s best interest. On April 2, 2021, the

---

[1] Joe remained employed with the temp agency; however, she had limited ability to work due to the on-going pandemic and her pregnancy.

J&DR court held a fourth permanency planning hearing and granted custody to Joe, finding that the permanency goal was achievable and approving NDHS's recommendation.

The circuit court continued the Moores' custody and visitation appeals several times. On December 14, 2021, a consolidated trial was held. At trial, the Moores attempted to introduce a *de bene esse* deposition of Dr. Tirrell, taken on December 8, 2021 in the circuit court appeals. Dr. Tirrell only met with Joe in March and April 2020, as part of the permanency planning hearings, and her deposition focused on that period alone. Dr. Tirrell opined that, in 2020, she was concerned about Joe's ability to parent M.J., due to Joe's past involvement with Child Protective Services, bipolar disorder, self-reported history of medication non-compliance, housing instability, and turbulent romantic relationships. Dr. Tirrell made no representations about Joe's current mental state or ability to care for M.J. After rejecting the Moores' attempt to introduce the deposition, the court accepted all of the Moores' proffers concerning the contents of Dr. Tirrell's *de bene esse* deposition and report, but it excluded introduction of the entire transcript and associated documents. The court also accepted photographs from the GAL. It then granted Joe's motion to strike, finding that the Moores made "no showing of actual harm." The Moores appealed.

## STANDARD OF REVIEW

When a trial court hears evidence *ore tenus*, its findings "will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Gray v. Gray*, 228 Va. 696, 699 (1985). We review a trial court's "decisions on custody and visitation," *Rainey v. Rainey*, 74 Va. App. 359, 376 (2022), and "on the admissibility of evidence," *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 206 (2022), for an abuse of discretion. In civil cases, "the erroneous exclusion of evidence is reversible error," unless the record plainly shows that the excluded evidence could not have affected the outcome. *Egan v. Butler*, 290 Va. 62, 69 (2015). We

- 4 -

review a trial court's decision on a motion to strike "in the light most favorable to the non-moving party." *Egan*, 290 Va. at 73.

Finally, "harmless-error review [is] required in *all* cases." *Spruill v. Garcia*, 298 Va. 120, 127 (2019). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." Code § 8.01-678. Thus, "[a]ny error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis." *Spruill*, 298 Va. at 127.

ANALYSIS

Assuming, without deciding, that exclusion of Dr. Tirrell's *de bene esse* deposition was error,[2] the deposition does not show current actual harm to M.J., and the record plainly establishes that admission of the deposition could not have affected the outcome of the motion to strike. Thus, although the Moores argue that the circuit court erred in excluding the deposition, preventing a finding of actual harm, this purported error was harmless. Furthermore, because neither the deposition nor other evidence meets the standard for awarding custody or visitation to a third party, the circuit court did not err in granting the motion to strike. As such, the Moores' contention that the circuit court did not consider the evidence in the light most favorable to the Moores fails.

*A. Legal standards governing third-party custody and visitation cases.*

Parents have a constitutional interest to "autonomy in child rearing." *Williams v. Williams*, 24 Va. App. 778, 782 (1997), *aff'd as modified*, 256 Va. 19 (1998); *see also Surles v. Mayer*, 48 Va. App. 146, 166 (2006). Nevertheless, by statute, certain third parties with

---

[2] We decline to reach a finding on the merits concerning the admissibility of the deposition and evaluation, as we must "decide cases 'on the best and narrowest grounds available'" under the doctrine of judicial restraint. *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)); *see also Spruill*, 298 Va. at 127.

"legitimate interests" may seek custody and/or visitation rights over the objection of the parent. Code §§ 20-124.1, -124.2. The term "custody" broadly encompasses both legal and physical "care and control" of a minor child, including access to the child, *see* Code § 20-124.1, while "visitation" narrowly refers to only a "period of access to a child," *Visitation*, *Black's Law Dictionary* (10th ed. 2014).

In custody disputes between third parties and parents, "the rights of the parent are, if at all possible, to be respected." *Bailes v. Sours*, 231 Va. 96, 99 (1986). "[T]he law presumes that the child's best interests will be served when in the custody of its parent." *Id.* at 100. This presumption may be rebutted by "clear and convincing evidence" of these factors: "(1) parental unfitness," "(2) a previous order of divestiture," "(3) voluntary relinquishment," "(4) abandonment," and (5) "special facts and circumstances" creating "an extraordinary reason for taking a child from its parent." *Id.*

In visitation disputes between third parties and parents, a trial court "shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest." Code § 20-124.2(B). A person with a legitimate interest "shall be broadly construed to accommodate the best interest of the child." Code § 20-124.1. However, "[f]or the constitutional requirement to be satisfied, before visitation can be ordered over the objection of the child's parents, a court must find an actual harm to the child's health or welfare without such visitation." *Williams*, 24 Va. App. at 784-85. The best interest of the child is only considered after a finding of actual harm. *Id.* at 785. "Without a finding of harm to the child, a court may not impose its subjective notions of 'best interests of the child' over the . . . objection of the child's parents without violating the constitutional rights of those parents." *Id.*

The United States Supreme Court recognized that third-party visitation rights necessarily implicate the same constitutional liberty interest as parental custody. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."). Because visitation—a narrower issue within the custodial liberty interest of parents—cannot be ordered without showing actual harm to the minor child in the absence of visitation, we find that custody also cannot be ordered without proving actual harm. In other words, a third-party seeking custody must show present clear and convincing evidence that the child will be harmed—unless removed from the biological parent's custody— because of parental unfitness, a previous order of divestiture, voluntary relinquishment, abandonment, or "special facts and circumstances" that constitute "an extraordinary reason for taking a child from its parent." *Bailes*, 231 Va. at 99-100.

Actual harm is not established by "showing that 'it would be "better," "desirable," or "beneficial" for a child' to have visitation with a non-parent." *Griffin v. Griffin*, 41 Va. App. 77, 84 (2003) (quoting *Williams*, 24 Va. App. at 784). We have explained that actual harm requires "compelling circumstances which suggest something near unfitness of custodial parents" to even obtain forced visitation. *Id.* at 85. Speculation is not enough. Neither is a "vague generalization about the positive influence" of a non-parent. *See id.*

> B. *Even if admitted, the deposition and evaluation do not show actual harm to M.J. sufficient for either custody or visitation.*

In April 2021, the J&DR court agreed with the recommendation of NDHS to return M.J. to Joe's custody. The J&DR court necessarily considered everything that occurred up to that point in making this decision, and it simultaneously rejected the Moores' petitions for custody and visitation. For the Moores to succeed at the custody and visitation trial before the circuit court, eight months later, they were required to demonstrate actual current harm to M.J. by clear

and convincing evidence. The Moores argue they could have done this, had the deposition of Dr. Tirrell been admitted.

Dr. Tirrell's *de bene esse* deposition does not show actual harm to M.J., as Dr. Tirrell did not testify about any current concerns in Joe's parenting. Dr. Tirrell's evaluation occurred nearly two years before the Moores' custody and visitation trial. Her deposition occurred twenty months after her last contact with Joe. In her deposition, Dr. Tirrell stated that she could not testify regarding Joe's current mental state, medication management, or parenting capabilities. The evidence suggests that Joe made significant improvements in her life between April 2020 and December 2021, including attending therapy and obtaining stable housing. Joe improved so much that she regained custody over M.J. in April 2021.

The Moores submitted that Dr. Tirrell's deposition and evaluation demonstrated actual harm to the minor child because it impeached Joe's testimony[3] and revealed her significant mental health and substance abuse issues, turbulent romantic history, and failure to medicate her bipolar disorder. Thus, the Moores claim that the deposition and evaluation show that Joe is unable to properly parent M.J. and that M.J. will experience actual harm without the Moores' presence in her life.

Mental health and substance abuse issues alone do not render a parent unfit per se. Although relevant to the historical picture, Dr. Tirrell's evaluation of Joe's mental health status is stale. M.J. was in Joe's custody for one year before this trial. The J&DR court knew of Joe's mental health and substance abuse issues, and it determined that Joe was a fit parent by awarding her custody. Regarding Joe's romantic history, the evidence—including the deposition and evaluation—indicated that Joe was in a stable, positive relationship. Testimony about Joe's

---

[3] The trial court accepted Joe's testimony that she was not on medication and Dr. Tirrell's testimony that Joe should be on medication to manage her bipolar disorder.

romantic history and any potential impact on the children constitutes pure speculation of actual harm. Finally, although Dr. Tirrell opined that Joe needed medication to treat her bipolar disorder in 2020, her deposition did not state that Joe currently requires such medication. The deposition's impeachment value is, therefore, weak. Considering all of these circumstances together, Dr. Tirrell's deposition provides no evidence of actual harm to M.J. beyond mere speculation.

*C. The record plainly shows that the excluded deposition and evaluation could not affect the outcome of Joe's motion to strike.*

Improperly excluded evidence is reversible error, unless the record plainly shows that the excluded evidence could not have affected the outcome. *Egan*, 290 Va. at 69. Under the doctrine of judicial restraint, we do not decide whether the deposition and evaluation were improperly excluded, as the record plainly establishes that neither document would have affected the outcome of this case.

Here, the circuit court accepted all of the Moores' proffers regarding the contents of the deposition and evaluation and considered these proffers in its decision. Specifically, it accepted the Moores' submission of the deposition and evaluation to show impeachment, Joe's mental health and substance abuse issues, and Joe's medication noncompliance. These proffers did not alter the circuit court's decision. The deposition and evaluation are included in the record because they were offered into evidence by the Moores. Upon review of the deposition and evaluation in their entirety—in addition to the proffers—it is clear that these documents could not have affected the outcome of this case, as they do not demonstrate that M.J. will suffer actual harm without the Moores' custody or visitation.

*D. The circuit court did not err in granting Joe's motion to strike.*

We incorporate our finding above that Dr. Tirrell's *de bene esse* deposition and evaluation do not show that M.J. would suffer actual harm without the Moores' presence in her

life. Considering all the evidence, the circuit court did not err in granting Joe's motion to strike, as the Moores failed to demonstrate actual harm to M.J. without their custody or visitation.

Beyond the deposition and evaluation, the Moores submitted their testimony and Joe's testimony, as an adverse witness, to demonstrate that M.J. would suffer actual harm without their presence. The Moores introduced no other evidence. The circuit court also received photographs from the GAL showing M.J.'s current school and current home.

Joe's ability to care for M.J. in 2019 is not at issue. Instead, the issue is whether M.J. would experience actual harm now without the Moores' presence. The custody and visitation trial occurred nearly one year after the Moores' last contact with M.J. Although the Moores testified about M.J.'s condition in 2019, they could not identify what harm M.J. would *now* suffer without their presence. Instead, they testified that they could better provide financially and spiritually, emphasized their "two-parent household," and questioned Joe's history of homelessness, despite her stable housing for over two years. When asked about her concerns regarding actual harm, Ms. Moore merely stated, "[W]ho will provide [M.J.] the mental stability, the emotional stability, the financial stability? Without the resources of others, how is [Joe] going to be able to maintain and upkeep the things we've set in place for [M.J.]?" Speculative worries do not constitute actual harm.

The photographs provided by the GAL support the circuit court's findings. The GAL provided photos of M.J.'s preschool to the court, as well as her current apartment. These photographs show a bright and clean living area, bedroom, and preschool. Joe's testimony included explanations for the abandonment in 2019, her current living situation and employment, and the fact that she is no longer using drugs.

The Moores introduced no other evidence to support their argument that M.J. would suffer actual harm if the circuit court denied their petitions for custody and visitation.

Considering the deposition, evaluation, and all other evidence together, the Moores failed to prove that M.J. would suffer actual harm without their visitation. Because the Moores failed to meet the standard for forced visitation, they also failed to show clear and convincing evidence rebutting the presumption of natural or adoptive-parent custody. *See Bailes*, 231 Va. at 100. Viewed in the light most favorable to the Moores, the circuit court did not err in granting Joe's motion to strike and dismissing both petitions.

## CONCLUSION

The record plainly shows that Dr. Tirrell's *de bene esse* deposition did not raise a showing of actual harm to M.J. Thus, the circuit court's purported error in excluding the deposition was harmless. Because the evidence does not demonstrate actual harm, which we hold is required in a custodial dispute between a parent and a third party, the circuit court did not err in granting the motion to strike. We affirm.

*Affirmed*.