COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Chaney and White
Argued at Lexington, Virginia


JOSHUA JOHNSON

                                                    MEMORANDUM OPINION* BY
v.         Record No. 2092-23-3                     JUDGE VERNIDA R. CHANEY
                                                    JULY 22, 2025
SABRINA LOWE, ET AL.


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Richard C. Patterson, Judge

(Jeffrey W. Stowers, Jr.; The Reliance Law Group, on brief), for
appellant.  Appellant submitting on brief.

(Dally K. Testerman; Broadwell, Gillespie & Nimmo, P.C., on brief),
for appellees.  Appellees submitting on brief.


Joshua Johnson (father) appeals the circuit court's order granting Jacob Lowe's

(stepfather) petition to adopt father's biological child.  On appeal, father argues that the circuit

court erred in finding that he withheld his consent to the adoption contrary to the child's best

interest.  Father also contends the circuit court erred in denying his motion to appoint a guardian

ad litem (GAL) for the child.  This Court finds that the circuit court did not err in finding that

father withheld his consent contrary to the best interest of the child.  The circuit court did not

abuse its discretion in declining to appoint a GAL for the child.  Accordingly, this Court affirms

the circuit court's judgment.[1]

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] We note that the parties waived oral argument in this case.  *See* Code § 17.1-403(ii)
(permitting the parties to waive argument).

BACKGROUND[2]

G.G.[3] was born to Joshua Johnson and Sabrina Lowe (mother) in June 2020.[4] After learning she was pregnant, mother informed father that he was "likely the father." During the pregnancy, father told mother "that he wanted nothing to do with the child." Mother never tried to contact father after G.G. was born. In September 2020, mother married Jacob Lowe, and G.G. has resided with them since then.

G.G. was diagnosed as autistic with a communication disorder. He received outpatient speech therapy and occupational therapy. He also received early intervention services but aged out of the program when he turned three years old. G.G. "does not deal well with changes in his life or routine."

In March 2023, father petitioned to establish his paternity of G.G. in the Tazewell County Juvenile and Domestic Relations District Court (JDR) under Code § 63.2-1242.3. Several weeks after father filed his paternity request, stepfather petitioned to adopt G.G. through a close relative adoption under Code § 63.2-1241. Stepfather wanted "to adopt the child and he acknowledged that he understood that the child would be legally his child." Mother joined and consented to the adoption petition. In October 2023, the JDR court entered an order establishing father's paternity. Father has never filed for custody or visitation of G.G.

---

[2] We view the evidence in the light most favorable to mother and stepfather, as the prevailing parties below, and we grant them the benefit of all reasonable inferences. *Chaphe v. Skeens*, 80 Va. App. 556, 559 (2024). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar*, 302 Va. 234, 240 n.2 (2023).

[3] In reciting the facts we use the minor child's initials, rather than their name, to protect their privacy.

[4] Portions of the record in this case are sealed. "To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions." *Herbert v. Joubert*, 83 Va. App. 592, 603 n.1 (2025) (quoting *Chaphe v. Skeens*, 80 Va. App. 556, 559 n.2 (2024)).

In November 2023, the circuit court held a hearing on the petition for adoption. During that proceeding, G.G. was not present, and father asked the circuit court to appoint a GAL for G.G. The circuit court denied the request.

Father disputed mother's account of their interactions during her pregnancy and claimed that mother stated only that it was "possible" he fathered G.G. Father was incarcerated between 2021 and 2023, when G.G. was between six months and two and a half years old. Father alleged he only learned of G.G.'s birth after the paternal grandmother "sent him a photo of the child while he was incarcerated in March 2022." Immediately after his release, father contacted mother about G.G.'s paternity. Father petitioned for paternity and learned that he was G.G.'s biological father. When he learned of G.G.'s diagnosis, father immediately scheduled therapy classes "in order to learn to better parent a child with autism."

Father acknowledged that in June 2023, he was "hospitalized for a drug overdose after being found unresponsive and requiring multiple Narcan [doses] to revive him." He was subsequently incarcerated for a month for violating his probation, after which he attended a court-ordered rehabilitation program. The program had three phases: counseling for drug addiction, followed by vocational training, ending with employment. At the time of the circuit court hearing, father was in the second phase and was training at an animal shelter. Father participated in Bible study, volunteer work, and family support activities. Father testified that he "would be able to visit with the child during the Family Support meetings on Fridays, the Saturday activity passes, and on the home passes on Sundays." Father had never petitioned for custody or visitation of G.G. because "he was incarcerated and did not know that he was the father of the child." Father's counselor testified he was doing "excellent" in his therapy and that he "mostly talk[ed] about being a father to the child."

Although the circuit court "praised" father for his progress in his rehabilitation program, it found that denying the adoption petition would be "disruptive" to G.G. given his autism diagnosis.

The circuit court found that father did not petition for custody or paternity after he knew he was "possibly" the father. The circuit court cited Code § 63.2-1203 in holding that father's withholding of consent to the adoption was not in the best interest of the child. Based on the evidence presented, the circuit court granted stepfather's petition to adopt G.G. Father appeals.

ANALYSIS

Father argues that the circuit court erred in terminating his residual parental rights and granting the adoption petition where appellees "failed to prove by clear and convincing evidence that [his] consent to adoption had been withheld contrary to the best interest of the child[.]" He also contends that "[t]he trial court erred in denying [his] motion to appoint a guardian ad litem for the child[.]" Finding no error, this Court affirms the circuit court's judgment.

I. The circuit court did not abuse its discretion in granting appellees' petition for adoption where father withheld his consent contrary to the best interest of the child.

When the circuit court hears evidence ore tenus, "its factual findings are 'entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017) (alterations in original) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014)). "Adoption in Virginia is solely a creature of statute." *Perkins v. Howington*, 82 Va. App. 1, 8 (2024) (quoting *Berry v. Barnes*, 72 Va. App. 281, 287 (2020)). Stepfather filed a petition for close relative adoption under Code § 63.2-1242.1, which includes "an adoption by the child's . . . stepparent." Code § 63.2-1242.1(A). Close relative adoptions are divided into two categories: those where the child has continuously resided with or in the home of the prospective adoptive parents for less than two years, governed by Code § 63.2-1242.2, and those in which the child has continuously resided with the prospective adoptive parent for more than two years, controlled by Code § 63.2-1242.3. G.G. has continuously lived with stepfather and

- 4 -

been in mother and stepfather's physical custody for over three years, so Code § 63.2-1242.3 governs his adoption.

Although Code § 63.2-1242.3 dispenses with many ordinary adoption requirements given the child's extensive time with stepfather, it does not eliminate the requirement of parental consent. *See* Code § 63.2-1202(A) ("No petition for adoption shall be granted, except as hereinafter provided in this section, unless written consent to the proposed adoption is filed with the petition."). The circuit court may grant an adoption without a parent's consent only if it determines that "the valid consent . . . is withheld contrary to the best interests of the child as set forth in [Code] § 63.2-1205[.]" *Moroney v. Majerus*, 82 Va. App. 737, 755 (2024) (second alteration in original) (quoting Code § 63.2-1203(A)).

To determine the best interests of the child under the statute, the circuit court must

> consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

Code § 63.2-1205. "[T]he meaning of 'the best interests of the child' is different in the context of adoptions[] and must be read in light of the biological parent's due process rights in [his] relationship to [his] child." *Copeland v. Todd*, 282 Va. 183, 197 (2011). This heightened standard applies because due process under the Fourteenth Amendment protects "the interest of parents in the care, custody, and control of their children[.]" *Id.* at 198 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Adopting a child over a parent's objection requires

"significant substantive and procedural safeguards to protect the biological parent's due process rights." *Id.*

"[S]o long as the circuit court properly considered the statutory factors, we can reverse its conclusions only if they are beyond the pale of reasonableness." *Geouge*, 68 Va. App. at 371. Weighing of the statutory factors in Code § 63.2-1205 "is, by necessity, fact-specific and highly discretionary." *Id.* at 372. "The discretion to make the relevant determinations is vested where the judicial branch comes into the closest contact with the child, the biological parents, and the prospective adoptive parents—the circuit court." *Chaphe v. Skeens*, 80 Va. App. 556, 564 (2024) (quoting *Geouge*, 68 Va. App. at 372). "An appellate court 'will not second-guess the circuit court's exercise of judgment regarding the statutory factors.'" *Id.* (quoting *Geouge*, 68 Va. App. at 372).

The record before this Court on appeal supports a finding that father withheld his consent for adoption contrary to the best interest of the child. Although father petitioned the JDR court to adjudicate his paternity and attempted to add his name to G.G.'s birth certificate, he never filed for custody or visitation. Despite knowing that he was potentially G.G.'s father prior to G.G.'s birth in June 2020, he did not seek a paternity test until March 2023.

In contrast, mother showed an effort to maintain custody by consenting to stepfather's petition for adoption. Mother currently has full custody and can care for G.G. full-time, as she is not employed outside the home. Mother and stepfather are financially and mentally capable of caring for G.G.

Father had only partially completed a court-ordered rehabilitation program, and father could only "visit with" the child during weekly family support meetings and weekend "passes." Father alleges that mother never contacted him about G.G., and he never petitioned for custody because he was incarcerated. But the record provides evidence that mother informed father that

he was potentially a father while she was pregnant—prior to his incarceration. Additionally, Sharon Horton, father's mother, told father that she "believed" him to be the father and sent him a photo of G.G., while father was incarcerated.

G.G. has autism and a communication disorder and requires specialized care. Mother and stepfather have been caring for G.G. "since [his] birth" and have enrolled him in therapy to ensure that his needs are met. Father testified that he "began the process of scheduling" therapy classes to learn to "better parent" a child with autism, but the record does not reflect that he had access to resources needed to care for a child with special needs. At the time of the circuit court hearing, G.G. was three years old. Father does not have any previous relationship with G.G., while mother has exercised full physical and legal custody since G.G.'s birth. Mother and stepfather have been caring for G.G. since birth. Lastly, the record shows that a change of physical custody would be detrimental to G.G. because he "does not deal well with changes in his life or routine."

Even if we might have rendered different factual findings or weighed the statutory factors differently, we will not second-guess the circuit court's exercise of judgment regarding the statutory factors. When, as here, the circuit court took evidence on the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision. *See Geouge*, 68 Va. App. at 372. Finding no abuse of discretion in granting the adoption petition, this Court affirms the circuit court's judgment.

## II. The circuit court did not abuse its discretion in denying father's motion to appoint a GAL.

Father argues the circuit court erred in denying his request for the appointment of a guardian ad litem to represent the child. "The established practice is that a [GAL] may be appointed after a trial judge makes a preliminary finding that the best interests of the child require such appointment." *Williams v. Panter*, 83 Va. App. 520, 550 (2025) (quoting

*Verrocchio v. Verrocchio*, 16 Va. App. 314, 317 (1993)). "Moreover, a 'trial court "shall not" appoint a [GAL] "unless the court finds . . . that the interests of the child or children are not otherwise adequately represented."'" *Id.* (second alteration in original) (quoting *Yopp v. Hodges*, 43 Va. App. 427, 435 (2004)). "[W]hen a decision is discretionary . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013) (second and third alterations in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013).

"In any case involving adoption of a child by a stepparent or other person with a legitimate interest pursuant to this section, the court *may* waive appointment of a guardian ad litem for the child." Code § 63.2-1241(D) (emphasis added). "When a statute 'is plain and unambiguous, [courts] are bound by th[at] plain meaning.'" *Pegasystems Inc. v. Appian Corp.*, 81 Va. App. 433, 479 (2024) (alterations in original) (quoting *Jones v. Commonwealth*, 296 Va. 412, 415 (2018)). "A court 'must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice.'" *Id.* (quoting *Jones*, 296 Va. at 415). The statute is silent as to when a court is required to appoint a GAL. "Where a statute is 'absolutely silent on a matter, it is an axiomatic principle of statutory construction that in effectuating [legislative] intent courts are to fill the inevitable statutory gaps by reference to the principles of the common law.'" *Everett v. Tawes*, 298 Va. 25, 39 (2019) (alteration in original) (quoting *Union Recovery Ltd. P'ship v. Horton*, 252 Va. 418, 424 (1996)).

A court shall appoint a GAL in "any case involving a child" in a "petition seeking termination of residual parental rights." *See* Code § 16.1-266. However, the General Assembly

- 8 -

has explicitly carved out a waiver in cases involving close relative adoptions. Code § 63.2-1241(D) ("In any case involving adoption of a child by a stepparent . . . the court *may* waive appointment of a guardian ad litem for the child." (emphasis added)); *see also Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020) ("When the General Assembly employs a specific word [shall] in one section of a statute, and chooses a different term [may] in another section of the statute, we must presume the difference in language was intentional.").

Father contends that it was inappropriate for the circuit court to deny a GAL because the adoption was "sharply contested, and the interests of the child [were] not adequately represented." Other than this blanket statement, father does not explain, and the record does not show, how the child's interests were not adequately represented. Instead, the record shows that the circuit court heard evidence from mother regarding the child's medical needs and his current course of treatment, as well as father's testimony regarding the efforts he had made to educate himself on the child's condition. It was well within the circuit court's discretion to waive a GAL in this case.

### III. Appellate Attorney Fees

Mother requests appellate attorney fees. "This Court has the discretion to grant or deny attorney[] fees incurred on appeal." *Stark v. Dinarany*, 73 Va. App. 733, 757 (2021). "[T]his Court's decisions regarding attorney[] fees and costs are based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" *Herbert v. Joubert*, 83 Va. App. 592, 624-25 (2025) (quoting *Friedman v. Smith*, 68 Va. App. 529, 546 (2018)). After considering the record before us and the equities of the case, we deny mother's request for appellate attorney fees.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*